STATE of Minnesota, Respondent,

v.

Dean Anthony OLMSCHEID, Appellant.

No. C4–92–606.

Court of Appeals of Minnesota.

Nov. 17, 1992.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Roger S. Van Heel, Stearns County Atty., Janelle P. Kendall, William R. Brost, Asst. Stearns County Attys., St. Cloud, for respondent.

Robert D. Stoneburner, Stoneburner Law Office, Paynesville, for appellant.

Considered and decided by NORTON, P.J., and HUSPENI and CRIPPEN, JJ.

## OPINION

HUSPENI, Judge.

This appeal is from a judgment of conviction for gross misdemeanor refusal to submit to testing, Minn.Stat. § 169.121, subd. 1a (1990). We affirm.

## FACTS

Appellant Dean Olmscheid was found sitting inside his pickup truck which was stuck in a snow-filled Stearns County ditch early on the morning of January 13, 1991. Deputy David Peschong approached the vehicle and saw no footprints leaving the truck on either the passenger's or driver's side. Looking inside, Peschong saw Olmscheid, the only occupant, slumped over the steering wheel. Olmscheid had a strong odor of alcohol about him.

The truck's engine was not running. Its lights were off and its gearshift was in "park." The keys were not in the ignition, and Deputy Peschong did not look for them. He asked Olmscheid how the truck had gotten into the ditch. Olmscheid responded that he didn't know, he thought a friend must have driven it there. However, he could not think of the friend's name. Olmscheid refused to take field sobriety tests, insisting he had not been driving. Deputy Peschong read him the implied consent advisory at the scene, in the squad car. Olmscheid refused to submit to testing, stating as his reason, "I wasn't driving."

The pickup truck was towed following Olmscheid's arrest. The following morning the tow truck driver found the ignition keys hanging from the turn signal lever. At trial, Olmscheid denied he was driving. He presented a witness who testified he had driven Olmscheid's truck into the ditch and had then gone for help.

Olmscheid requested a jury instruction requiring the state to prove beyond a reasonable doubt that he was in physical control of the truck. The trial court, however, instructed the jury only that the officer had to have had probable cause to believe Olmscheid "drove or operated or was in physical control of a motor vehicle," and that the

state had to prove this beyond a reasonable doubt. The jury found Olmscheid guilty of criminal refusal but not guilty of DWI.

## ISSUES

1. Did the trial court err in failing to instruct the jury that the state was required to prove that appellant was in physical control of the vehicle?

2. Are the jury's verdicts legally inconsistent?

## ANALYSIS

### I.

Olmscheid argues that the jury should have been instructed that "physical control" is an element of the refusal offense, and that without such an element the statute violates due process. The state contends that the refusal statute must be read as written, with no additional elements implied.

The criminal refusal statute provides:

It is a crime * * * to refuse to submit to a chemical test * * * *under section 169.-123* if [the driver has the requisite prior revocation(s) ].

Minn.Stat. § 169.121, subd. 1a (1990) (emphasis added).

■ The phrase "under section 169.123" incorporates to some degree the provisions of the implied consent statute into the crime of refusal. For example, we conclude that a driver must have been read the implied consent advisory in order to have criminally refused chemical testing. It does not necessarily follow, however, that all the requirements for a civil license revocation must have been met.

The trial court instructed the jury that:

The elements of refusal to submit to testing are: First, the peace officer had probable cause to believe the [appellant] drove or operated or was in physical control of a motor vehicle while under the influence of alcohol. Probable cause means that it was more likely than not that the [appellant] drove, operated or was in physical control of a motor vehicle while under the influence of alcohol.

Second, the [appellant] was requested by a peace officer to submit to a chemical test of the [appellant's] breath.

Third, the [appellant] refused to submit to the test.

Fourth, the [appellant's] act took place on January 13, 1991 in Stearns County.

■ The trial court required the state to prove that Deputy Peschong had probable cause to believe Olmscheid was "in physical control" of the vehicle. The patterned instruction set forth in CRIMJIG 29.17.02 [1] is silent as to the requirement of probable cause. Thus, the instruction given by the trial court placed a burden upon the state which would not have been placed upon it under the patterned instruction.

We conclude that the trial court was correct in placing upon the state the burden of proving beyond a reasonable doubt that the peace officer had probable cause to believe Olmscheid was in physical control of the vehicle. In order to request a chemical test under the implied consent law, a peace officer must have probable cause to believe the driver was driving, operating or in physical control of a motor vehicle. Minn.Stat. § 169.123, subd. 2(a) (1990). Thus, probable cause to believe this fact exists is a procedural prerequisite. A refusal to submit to a test requested without probable cause to believe the "driver" was at least in physical control of the vehicle is not a refusal to submit to a

---

1. Under this instruction the elements of refusal to submit to testing are:

First, defendant was requested by a peace officer to submit to a chemical test of defendant's (blood) (breath) (urine) under the Implied Consent Law.

Second, defendant refused to submit to the test.

Third, (once within the past five years) (twice or more within the past ten years) defendant's drivers license had been (suspended) (revoked) (cancelled) (denied) for _____.

chemical test "under section 169.123." [2] *See* Minn.Stat. § 169.121, subd. 1a (1990).

Notwithstanding the trial court's expanded jury instruction, Olmscheid argues that the jury should have been required to find beyond a reasonable doubt that he was, in fact, in physical control of the vehicle, not merely that the peace officer had probable cause to believe that to be true. In support of this argument Olmscheid relies on cases in which this court has held that in license revocation hearings the commissioner must prove actual driving, operation or physical control by a fair preponderance of the evidence. *E.g., Llona v. Commissioner of Pub. Safety,* 389 N.W.2d 210, 212 (Minn. App.1986); *Roberts v. Commissioner of Pub. Safety,* 371 N.W.2d 605, 607 (Minn. App.1985), *pet. for rev. denied* (Minn. Oct. 11, 1985).

We are disinclined to extend case law of this court beyond application to license revocation proceedings. Actual physical control is not a prerequisite to requesting the test under Minn.Stat. § 169.123. Often the peace officer cannot make a determination regarding actual driving, operating or physical control at the time a test is requested. The statute requires only that the peace officer have probable cause.

 Olmscheid contends the statute as construed by the trial court violates due process. We agree that due process requires that criminal charges must be proved beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970). However, Olmscheid presents no authority for the proposition that due process requires that a criminal statute incorporate all elements of the related civil violation. Nor does due process require that the elements of the criminal offense be more demanding than those of the parallel civil violation. Lacking such authority, we must follow the general rule that the definition of a criminal offense is within the province of the legislature. *See State, City of Mankato v. Chirpich,* 392 N.W.2d 34, 37 (Minn.App. 1986), *pet. for rev. denied* (Minn. Oct. 17, 1986), *cert. denied* 481 U.S. 1015, 107 S.Ct. 1891, 95 L.Ed.2d 498 (1987).

Finally, we note that in the civil implied consent proceeding, the ultimate civil sanction of a driver's license revocation is in issue. It is therefore reasonable to require the commissioner to prove not only that the officer had probable cause to believe the "driver" was in physical control, but also that the "driver" was *actually* in physical control. However, in a criminal refusal proceeding, the implied consent statute is merely being utilized to determine what is a proper test request for which criminal liability may be imposed. We conclude that the phrase "under section 169.123" refers to the procedures required up to the point of refusal, not to issues which may thereafter arise.

## II.

 Olmscheid argues that the jury's acquittal on the DWI charge is legally inconsistent with its verdict of guilty of criminal refusal. We disagree. Guilty and not guilty verdicts on different counts are not legally inconsistent, even if logically inconsistent, because the jury may permissibly have exercised its power of lenity on one of the counts. *See State v. Juelfs,* 270 N.W.2d 873, 873–74 (Minn.1978).

## DECISION

The trial court did not err in instructing the jury on the elements of criminal refusal. The jury verdicts are not inconsistent.

Affirmed.

---

Fourth, defendant's act took place on (or about) _____, in _____ County.

**2.** A driver who is asked to submit to testing may challenge his revocation on a number of grounds. *See* Minn.Stat. § 169.123, subd. 6 (1990). However, we conclude the phrase "under section 169.123" in the refusal statute refers only to those prerequisites to the test request set out in the implied consent statute. We need not decide here whether or how the issue of "reasonable grounds for refusal" relates to the elements of the crime of refusal.