**STATE of Minnesota, Respondent,**

**v.**

**Susannah Jane MELLETT, Appellant.**

**No. C4–01–1036.**

Court of Appeals of Minnesota.

April 30, 2002.

Mike Hatch, Attorney General, Jay M. Heffern, Minneapolis City Attorney, Lee C. Wolf, Assistant City Attorney, Minneapolis, for respondent.

Jeffrey S. Sheridan, Strandemo & Sheridan, Eagan, for appellant.

Considered and decided by ANDERSON, Presiding Judge, HARTEN, Judge, and STONEBURNER, Judge.

## OPINION

G. BARRY ANDERSON, Judge.

Appellant was arrested for and charged with first-degree driving while impaired (Minn.Stat. §§ 169A.20, subd. 1(1), 169A.25, subd. 1 (2000)) and first-degree refusal to submit to chemical testing (Minn.Stat. §§ 169A.20, subd. 2, 169A.25, subd. 1 (2000)) [1].

A jury found appellant not guilty on the driving-while-impaired (DWI) charge, but found her guilty of the refusal-to-submit charge.

Appellant argues that: (1) Minn.Stat. § 169A.20, subd. 2, is unconstitutional; (2) the district court incorrectly instructed the jury as to the refusal-to-submit charge; (3) the admission into evidence of her refusal to perform field sobriety tests was error; and (4) the district court erred by using her prior license revocations as charge enhancements in this case because her constitutional rights were violated during those prior license revocations. Because we conclude that the district court did not commit error, we affirm.

## FACTS

On February 18, 2001, Minneapolis police officer Joel Dittman observed a car traveling the wrong way on a one-way street. The car, driven by appellant Su-sannah Jane Mellett, was stopped by the officer. The officer suspected that appellant was under the influence of alcohol. The officer asked appellant to leave the vehicle and perform field sobriety tests. Appellant refused to perform any tests and also refused to take a preliminary-breath test. The officer arrested appellant and took her to the chemical-testing unit in downtown Minneapolis. Appellant indicated that she wanted to contact an attorney and then tried to contact an attorney for approximately 30 minutes. Appellant never reached an attorney and refused to take a breath test or provide a blood or urine sample.

Because appellant's driving privileges had been revoked twice within the preceding ten years, she was charged with first-degree DWI and first-degree refusal-to-submit to chemical testing (hereinafter "refusal-to-submit charge").

Appellant moved to suppress her statement to the officer in which she refused to perform field sobriety testing. At trial, the district court allowed the state to present evidence of appellant's refusal to perform field sobriety tests. Appellant submitted a proposed jury instruction regarding the refusal-to-submit charge. The district court declined to give appellant's instruction, and gave CRIMJIG 29.28, which is the form jury instruction for the refusal-to-submit charge.

The jury found appellant guilty of the refusal-to-submit charge and not guilty of the other charges. Appellant's sentence was enhanced due to previous revocations, and appellant's sentence was stayed pending this appeal.

---

1. Minn.Stat. § 169A.20, subd. 2, was previously found at Minn.Stat. § 169.121, subd. 1a. The legislature recently recodified chapter 169 in 2000, but the statute, in substance, remains unchanged. *See* Minn. Laws ch. 478, art. 1 § 7.

## ISSUES

I.  Did the district court err by concluding that Minn.Stat. § 169A.20, subd. 2 (2000) is constitutional?

II. Did the district court abuse its discretion when it refused to give appellant's proposed jury instruction, but instead gave CRIMJIG 29.28?

III. Did the district court abuse its discretion when it admitted evidence of appellant's refusal to perform field sobriety tests?

IV. Did the district court err by finding that appellant's prior license revocations could be used to enhance appellant's refusal-to-submit charge to a gross misdemeanor?

## ANALYSIS

### I.

Appellant claims that Minn.Stat. § 169A.20, subd. 2 (2000), the refusal statute, violates her substantive-due-process rights, and is, therefore, unconstitutional. Appellant's substantive-due-process claim depends on two alleged violations of appellant's constitutional rights: (1) a violation of appellant's right to privacy;[2] and (2) a violation of appellant's Fifth Amendment right against self-incrimination.

■ "Evaluating a statute's constitutionality is a question of law." *Hamilton v. Comm'r of Pub. Safety*, 600 N.W.2d 720, 722 (Minn.1999). Accordingly, this court "is not bound by the lower court's conclusions." *In re Blilie*, 494 N.W.2d 877, 881 (Minn.1993) (quoting *Sherek v. Indep. Sch. Dist. No. 699*, 449 N.W.2d 434, 436 (Minn. 1990)).

Minn.Stat. § 169A.20, subd. 2, states:

It is a crime for any person to refuse to submit to a chemical test of the person's blood, breath, or urine under section 169A.52 (test refusal or failure; revocation of license).

Both the United States and Minnesota constitutions provide substantive-due-process protections against arbitrary and capricious state action. U.S. Const. amend. XIV; *State v. Mitchell*, 577 N.W.2d 481, 491 (Minn.1998).

But the United States Supreme Court has stated that if a claim is covered by a specific constitutional provision, that claim must be analyzed according to the standards established by the specific provision, and not as a possible violation of the claimant's substantive-due-process rights. *County of Sacramento v. Lewis*, 523 U.S. 833, 842, 118 S.Ct. 1708, 1714, 140 L.Ed.2d 1043 (1998); *Dokman v. County of Hennepin*, 637 N.W.2d 286, 295 (Minn.App.2001) (holding that, because a claim could be addressed under Fourth Amendment, the court did not need to address party's due process claim).

### A. Fifth Amendment

■ The Minnesota Supreme Court has already addressed the constitutionality of

**2.** At oral argument, appellant's counsel claimed that this alleged right to be free from bodily invasion arises from the Fourth Amendment right to be free from unwarranted searches and seizures. This argument is without merit. The Supreme Court has explicitly rejected Fourth Amendment challenges to chemical testing in the driving-while-intoxicated context. *See Schmerber v. California*, 384 U.S. 757, 772, 86 S.Ct. 1826, 1836, 16 L.Ed.2d 908 (1966). Therefore, we analyze appellant's arguments pursuant to the right to privacy that arises from article I, §§ 1, 2 & 10 of the Minnesota Constitution, *see State v. Davidson*, 481 N.W.2d 51, 58 (Minn.1992) (stating that right to privacy under Minnesota Constitution is broader than comparable federal constitutional provision), and separately analyze appellant's Fourth Amendment argument.

the refusal statute and has found that the statute does not violate a defendant's right against self-incrimination, guaranteed by the Fifth Amendment of the United States Constitution and article I, section 7, of the Minnesota Constitution.[3] Therefore, appellant's substantive-due-process claim is without merit because the refusal statute passes constitutional muster under a Fifth Amendment analysis. *See McDonnell v. Comm'r of Pub. Safety*, 473 N.W.2d 848, 856 (Minn.1991). But in the interests of justice, we also address appellant's right-to-privacy and Fourth Amendment challenges to the refusal statute. *See* Minn. R. Civ. P. 103.04.

### B. Right to Privacy

■  There is a right to privacy under the Minnesota constitution. *See State v. Gray*, 413 N.W.2d 107, 111 (Minn.1987). "The right begins with protecting the integrity of one's own body and includes the right not to have it altered or invaded without consent." *Jarvis v. Levine*, 418 N.W.2d 139, 148 (Minn.1988). The right to privacy, though, is not absolute. *Minnesota State Bd. of Health v. City of Brainerd*, 308 Minn. 24, 36, 241 N.W.2d 624, 631 (1976) (holding that "[w]hether one's right to bodily integrity is designated a right of personal privacy or not, though, does not alter [the] conclusion that the right, like other constitutional rights, is not absolute"). "When there is an allegation of interference by the state with a protected right of privacy," we must, "balance the interest in the privacy against the state's need to intrude on that privacy." *LaChapelle v. Mitten*, 607 N.W.2d 151, 164

(Minn.App.2000), *review denied* (Minn. May 16, 2000).

■  Here, because the legislature has a compelling state interest in protecting state residents from drunk drivers, and an important part of the implementation of that interest is the testing of those whom officers have probable cause to believe have been drinking and are driving while impaired, that balancing test favors intrusion by the state on privacy rights held by appellant. *See South Dakota v. Neville*, 459 U.S. 553, 558–559, 103 S.Ct. 916, 919–920, 74 L.Ed.2d 748 (1983) (stating that the United States Supreme Court has long recognized the compelling state interest in highway safety); *State v. Hulst*, 510 N.W.2d 262, 263 (Minn.App.1994) (recognizing necessity of probable-cause determination by officer in refusal-to-submit context).

This court has recognized that other compelling state interests may justify an intrusion into the right to privacy. *See LaChapelle*, 607 N.W.2d at 164 (holding that state's compelling interest in protecting children justifies intrusion against familial right to privacy); *Humenansky v. Minnesota Bd. of Med. Exam'rs*, 525 N.W.2d 559, 567–68 (Minn.App.1994) (holding that right to privacy was not violated by statute that allowed physician to be required to submit to mental and physical examinations), *review denied* (Minn. Feb. 14, 1995). In this case, a compelling state interest is involved, and appellant's right to privacy, to whatever degree it exists here, is justifiably subject to intrusion.

---

**3.**  The supreme court stated:
We therefore conclude that in this particular context—where an individual is requested to submit to blood alcohol content testing and potentially faces criminal penalties for refusing to do so, and where that individual is provided a reasonable opportunity

to consult an attorney before deciding whether to submit as requested—neither the state nor the federal privilege against compelled self-incrimination is violated.
*McDonnell v. Comm'r of Pub. Safety*, 473 N.W.2d 848, 856 (Minn.1991).

## C. Fourth Amendment

At oral argument, appellant asserted that *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), supports her claim that criminalizing the refusal to submit to chemical testing violates the Fourth Amendment. Appellant correctly argues that *Schmerber* allows for the withdrawal of blood without a warrant from a suspected drunk driver, if the withdrawal is conducted in a reasonable manner, for example, as ordered by a physician, because of the possible dissipation of alcohol from the suspect's system. *Id.* at 770–72, 86 S.Ct. at 1835–36.

■ While appellant concedes that the state has the power to take a blood sample, by force if need be, appellant also argues that because the state has this power, all other means of coercion available to the state to require submission to chemical testing are foreclosed. But appellant cites no direct authority for this conclusion, and the presence of one constitutional remedy to enforce the driving-while-intoxicated statutes cannot prevent legislative enactment of other procedures. *See Davis v. Comm'r of Pub. Safety*, 517 N.W.2d 901, 904 (Minn.1994) (concluding that the ability of the state to take a blood sample by force does not answer question of what process is due if suspect refuses to submit to testing), *superseded by statute as recognized in Hamilton*, 600 N.W.2d at 722. "It is not for this court 'to question the wisdom * * * of a police regulation.'" *McLeod County Bd. of Comm'rs v. State, Dep't of Nat'l Res.*, 549 N.W.2d 630, 634 (Minn.App.1996) (quoting *Lee v. Delmont*, 228 Minn. 101, 108, 36 N.W.2d 530, 536 (1949)) (ellipsis in original), *review denied* (Minn. Aug. 20, 1996). Therefore, we defer to the legislature's judgment and hold that the refusal statute does not violate appellant's Fourth Amendment rights.

## II.

■ "The refusal to give a requested jury instruction lies within the discretion of the trial court and no error results if no abuse of discretion is shown." *State v. Blasus*, 445 N.W.2d 535, 542 (Minn.1989) (citation omitted).

■ Appellant challenges the district court's decision to give CRIMJIG 29.28 (formerly CRIMJIG 29.17.02). Appellant argues that CRIMJIG 29.28 misstates the elements of Minn.Stat. § 169A.20, subd. 2, and that the district court should have given appellant's proposed jury instruction, instead of CRIMJIG 29.28.

■ First, we note that appellant's requested jury instruction addresses several legal issues that would be inappropriate to submit to a jury for consideration. For example, appellant's requested jury instruction addresses the issue of right to counsel, and whether that right was fully vindicated by the officer in this case. But purely legal issues, such as whether the right to counsel was vindicated, are for the district court, and not for the jury, to decide. *Parsons v. Comm'r of Pub. Safety*, 488 N.W.2d 500, 501 (Minn.App.1992) (whether driver's right to counsel was vindicated is a question of law for the district court to decide and for this court to review de novo).

Furthermore, this court has addressed this particular jury instruction before in *State v. Olmscheid*, 492 N.W.2d 263 (Minn. App.1992), and *Olmscheid* supports the conclusion that CRIMJIG 29.28 was the proper instruction to be given in this case.

In *Olmscheid*, this court concluded that the refusal statute now codified at § 169A.20, subd. 2, incorporates some of the civil implied-consent statute via the language "under section [169A.52]." *Id.* at 266 (recently renumbered statute in brackets). But this court also concluded that

the inclusion of such language does not require that all of the elements of the related civil violation be proven beyond a reasonable doubt. *Id.* Therefore, the district court did not violate Olmscheid's due process rights when it did not instruct the jury on *all* of the elements of the civil implied-consent statute. *Id.*

Appellant argues that the state did not prove several elements beyond a reasonable doubt, and that such lack of proof violated her due process rights. But as *Olmscheid* states, "we must follow the general rule that the definition of a criminal offense is within the province of the legislature." *Id.* (citation omitted). The legislature has not acted to substantively amend the refusal statute since the *Olmscheid* decision. Therefore the district court did not abuse its discretion by giving CRIMJIG 29.28.

### III.

■ We largely defer to a district court's evidentiary rulings, which will not be overturned absent a clear abuse of discretion. *State v. Kelly,* 435 N.W.2d 807, 813 (Minn.1989). The admissibility of the refusal to perform field sobriety tests into evidence is an issue not yet addressed by Minnesota appellate courts.[4]

Other states, on various grounds, allow into evidence a refusal to perform field sobriety tests. *See People v. Berg,* 92 N.Y.2d 701, 685 N.Y.S.2d 906, 708 N.E.2d 979, 982 (1999); *Farmer v. Commonwealth,* 12 Va.App. 337, 404 S.E.2d 371, 373 (1991); *City of Seattle v. Stalsbroten,* 138 Wash.2d 227, 978 P.2d 1059, 1065 (1999); *State v. Mallick,* 210 Wis.2d 427, 565 N.W.2d 245, 248 (1997). It is useful to look at each of these cases.

*Berg,* a recent New York case, determined that if a refusal to perform field sobriety tests is not the product of custodial interrogation, the refusal does not need to be preceded by *Miranda* warnings to be admissible. *See Berg,* 685 N.Y.S.2d 906, 708 N.E.2d at 982.

*Farmer* and *Mallick,* on the other hand, analyze the refusal to perform field sobriety tests in a testimonial versus non-testimonial context. *Farmer* analogized the refusal to perform field sobriety tests to a refusal to take a blood test. *Farmer,* 404 S.E.2d at 373. The *Farmer* court held that there is no reason to distinguish between the performance of field sobriety tests, which is non-testimonial in nature, and the act of refusing to submit to chemical testing. *Id.* Therefore, *Farmer* held that a refusal to perform field sobriety tests is non-testimonial in nature, and, con-

---

**4.** An authority on moving-traffic violations has stated:

> Field sobriety tests (standing on one leg, finger to nose, walking heel-to-toe on a straight line, HGN, etc.) are very important pieces of evidence for the state in a DWI prosecution. *An issue not yet decided by the Minnesota courts is the admissibility of a defendant's refusal to perform such tests.* However, in *State v. Taylor* [648 So.2d 701 (Fla.1995)], the Florida Supreme Court held a driver's refusal to perform such tests was admissible in his criminal trial for DWI. The court held that such tests are not compelled; consequently, they are not in violation of the driver's fifth amendment

rights. It further held that refusal to perform such tests can be an indication of a consciousness of guilt. Compare * * * *State v. Whitehead* [458 N.W.2d 145 (Minn. App.1990), *review denied* (Minn. Sept. 14, 1990)], and *Pennsylvania v. Muniz* [496 U.S. 582, 110 S.Ct. 2638 (1990)], which held that interrogation questions not related to informing a driver of his or her implied consent rights, but asked during that process, are *not* admissible unless they are preceded by a *Miranda* warning.

> 2 Martin J. Costello et al., *Minnesota Misdemeanors and Moving Traffic Violations* 73 (3d ed.1999) (first emphasis added) (footnotes omitted).

sequently, the Fifth Amendment allows the refusal into evidence. *Id. Mallick*, like *Farmer*, addressed the refusal to perform field sobriety tests from a testimonial perspective. Relying on *Farmer*, the *Mallick* court also determined that the refusal was non-testimonial in nature. *Mallick*, 565 N.W.2d at 246.[5]

The *Stalsbroten* court noted that the majority of courts have concluded that the admission into evidence of a refusal to perform field sobriety tests does not violate the privilege against self-incrimination.[6] But the *Stalsbroten* court held that a refusal to perform field sobriety tests is admissible for two separate reasons: (1) the refusal is non-testimonial evidence, *Stalsbroten*, 978 P.2d at 1063; and (2) the refusal was not impermissibly compelled in violation of the defendant's Fifth Amendment right. *Id.* at 1064.

Therefore, Virginia and Wisconsin courts allow the refusal to perform field sobriety tests into evidence because it is non-testimonial, Washington courts allow the refusal because it is non-testimonial and not impermissibly compelled, and New York courts allow the refusal into evidence because the questioning leading to the refusal is not custodial interrogation.

Characterizing the refusal to perform field sobriety tests as testimonial or non-testimonial is not easily accomplished and is subject to much debate. *See e.g., Stalsbroten*, 978 P.2d at 1065–70 (Johnson, J., dissenting) (arguing that the refusal "was admittedly offered solely for its testimonial value—the implied assertion of belief that

Stalsbroten knew he was drunk. * * * Thus, indisputably, the incriminating value of the evidence here stemmed in whole from its testimonial component.").

But we think it is unnecessary to reach this question because the better analysis is that appellant's refusal to perform field sobriety tests here did not occur during custodial interrogation, and is therefore admissible under our custodial-interrogation jurisprudence.

In *Miranda*, the United States Supreme Court held that under the Fifth Amendment, a criminal defendant has a right against self-incrimination and is entitled to be informed of that right. *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). The right to a *Miranda* warning attaches only during custodial interrogation. *Id.*

The determination of whether a suspect is in custody is an objective inquiry. The district court must decide whether a reasonable person in the suspect's situation would have understood that she was in custody. *State v. Hince*, 540 N.W.2d 820, 823 (Minn.1995).

If a suspect is not under arrest, a district court must consider all of the surrounding circumstances and assess whether a reasonable person in the suspect's position would have believed she was in custody to the degree associated with arrest. *State v. Champion*, 533 N.W.2d 40, 43 (Minn.1995). We independently review the district court's determi-

---

**5.** Furthermore, the *Mallick* court also relied on Wisconsin precedent (*State v. Babbitt*, 188 Wis.2d 349, 525 N.W.2d 102 (1994)) to reach the same conclusion as the *Farmer* court: that a refusal is a non-testimonial communication and therefore is not barred by the Fifth Amendment. *Mallick*, 565 N.W.2d at 247–48.

**6.** *Stalsbroten*, 978 P.2d at 1065 (citing *State v. Taylor*, 648 So.2d 701 (Fla.1995); *State v. Washington*, 498 So.2d 136 (La.Ct.App.1986); *State v. Wright*, 116 N.M. 832, 867 P.2d 1214 (1993); *Commonwealth v. McConnell*, 404 Pa.Super. 439, 591 A.2d 288 (1991); *State v. Hoenscheid*, 374 N.W.2d 128 (S.D.1985); *Dawkins v. State*, 822 S.W.2d 668 (Tex.Ct. App.1991)).

nation regarding custody and the necessity of a *Miranda* warning. *Hince*, 540 N.W.2d at 823.

At trial, the district court denied appellant's motion to exclude her refusal to perform field sobriety tests, but did so without making a specific finding as to whether appellant was in custody when she refused to perform those tests.

The testimony at the evidentiary hearing and at trial indicates that the refusal by appellant came before arrest and without custodial interrogation. The officer asked appellant to leave her vehicle based on his suspicions that she was intoxicated. After getting out of her vehicle, appellant refused to perform any type of field sobriety test. Only then did an arrest occur.

■ Before appellant's refusal to perform field sobriety tests, a reasonable person would not have felt that she was in custody to the degree associated with formal arrest. *See Champion*, 533 N.W.2d at 43. There is no suggestion in the record that the officer used anything but a single request to induce appellant to get out of her vehicle, and there was no display of force. While it is true that a uniformed officer, using a siren and emergency lights, conducted this traffic stop, more is required to indicate custodial interrogation. *See, e.g., State v. Moorman*, 505 N.W.2d 593, 599 (Minn.1993) (person under arrest and therefore in custody when handcuffed); *State v. Olson*, 634 N.W.2d 224, 229 (Minn.App.2001) (concluding that an officer telling suspect he was "under arrest" indicated custody), *review denied* (Minn. Dec. 11, 2001).

Since there is no evidence that appellant was in custody, her refusal to perform field sobriety tests was not the product of custodial interrogation. Consequently, *Miranda* warnings were not a prerequisite to the use of the refusal statement as evidence at appellant's trial. Our conclusion is bolstered by appellant's counsel's pretrial comments, where counsel stated, "I never suggested, nor do I suggest now, that she was entitled to a *Miranda* warning[.]"

We leave for another day the resolution of whether refusal to perform field sobriety tests is testimonial and the issue of such a refusal arising in the context of custodial interrogation by the police. It is sufficient for our purposes in the present case to hold that because appellant was not in custody, *Miranda* rights did not attach, and the district court did not abuse its discretion by admitting appellant's refusal to perform field sobriety tests into evidence.

## IV.

■ Appellant challenges the use of her prior license revocations to enhance the refusal-to-submit charge. Because appellant was charged with first-degree DWI and first-degree refusal-to-submit, the state had the burden of proving two aggravating factors pursuant to Minn.Stat. § 169A.25, subd. 1. *See* Minn.Stat. § 169A.03, subd. 3 (defining aggravating factors); *see also* CRIMJIG 29.22 (sample jury instruction regarding one aggravating factor). Respondent produced certified copies of appellant's two license revocations from May 1998 and October 1997, and these copies were submitted into evidence.

Respondent also produced a petition to enter a guilty plea from the October 1997 incident. The petition was signed by appellant and indicates appellant was represented by an attorney and had discussed her constitutional rights with that attorney. Furthermore, the petition specifically mentions that if appellant was arrested in the future for similar charges, she could be sentenced to a gross misdemeanor

based on the plea. Such a petition is prima facie evidence that the plea was not obtained in violation of appellant's constitutional rights. *State v. Fussy*, 467 N.W.2d 601, 605 (Minn.1991). But no such petition exists in the record for the May 1998 license revocation.

■ Appellant claims that her prior license revocations may not be used because she was not given a full opportunity to consult with an attorney. Under the Minnesota Constitution, an individual has a limited right, upon request, to obtain legal advice before deciding whether to submit to chemical testing, provided the consultation does not unreasonably delay administration of the test. Minn.Stat. § 169A.51, subd. 2(4) (2000); *Friedman v. Comm'r of Pub. Safety*, 473 N.W.2d 828, 835 (Minn. 1991). But it is well settled that there is no *Sixth Amendment* right to consult with counsel before deciding whether to consent to chemical testing. *Friedman*, 473 N.W.2d at 840 (Coyne, J., dissenting) (stating that Minnesota Supreme Court has expressly rejected the argument that a driver has a right under Sixth Amendment to consult with attorney before chemical testing). Therefore, appellant's right-to-counsel argument must be based on the statutorily granted right and not on the Sixth Amendment right to counsel.

The issue of using prior license revocations for charge-enhancement purposes was recently addressed in *State v. Dumas*, 587 N.W.2d 299 (Minn.App.1998), *review denied* (Minn. Feb. 24, 1999). The *Dumas* court held that Minn.Stat. § 169.121, subd.

3(c)(2) (1996) was not unconstitutional. *Id.* at 304–05. The *Dumas* court also held that *State v. Nordstrom*, 331 N.W.2d 901 (Minn.1983), prohibits "the use of a prior *unconstitutionally* obtained *conviction* to enhance a subsequent charge." *Dumas*, 587 N.W.2d at 302 (second emphasis added).

The *Nordstrom* court also concluded that once a defendant properly raises the issue of the constitutionality of a prior conviction, the state then has the burden of proving that the conviction was obtained consistent with constitutional requirements. *Nordstrom*, 331 N.W.2d at 905.

■ To properly raise the constitutionality of a prior license revocation and shift the burden of proof to the state, an appellant must (1) promptly notify the state that her constitutional rights were violated during a prior license revocation; and (2) "produce evidence in support of that contention with respect to each challenged [revocation]." *Fussy*, 467 N.W.2d at 603 (citing *State v. Goff*, 418 N.W.2d 169, 172 (Minn.1988)). The *Dumas* court recognized that ordinarily a sworn affidavit, stating that the defendant was not represented by counsel and did not validly waive her right to counsel, will satisfy an appellant's burden of production. *Id.*

■ Here, appellant provided an affidavit stating that she did not have a full opportunity to consult with an attorney during her prior license revocations.[7]

[A]lthough the defendant does not have the ultimate burden of proof, the defen-

---

7. Appellant's affidavit in support of her memorandum in opposition of enhancement states in relevant part:

I do not believe I had the full opportunity of consulting with an attorney I was entitled to when I was asked to submit to testing in the prior events that led to the implied consent revocations that are being used to enhance the charges in this matter. I also

believe my implied consent revocations were obtained in violation of my constitutional rights because they are the product of a violation of my right to be free from unwarranted and unreasonable searches and seizures, my right against self-incrimination, and I was denied a fair chance to get independent testing.

dant is obligated to come forward with some evidence indicating that the defendant was deprived of the right to counsel before the state must assume its burden of proof.

*Fussy*, 467 N.W.2d at 603 (citation omitted). The statutorily granted right to counsel in the implied consent context is, by its own definition, limited. Appellant has only claimed the lack of a full opportunity to consult with an attorney and has provided no other evidence. Given these two facts, we hold that appellant has not met her obligation here, and therefore has not shifted the burden of proof to the state.

Furthermore, appellant's cursory claims in her affidavit regarding other constitutional violations are also not supported by any evidence. Therefore, we hold that those claims must also fail. *See id.*

## DECISION

The district court correctly held that Minn.Stat. § 169A.20, subd. 2, the refusal statute, is constitutional, and did not abuse its discretion by giving CRIMJIG 29.28 as the jury instruction on the elements of the refusal-to-submit charge. The district court properly admitted appellant's refusal to perform field sobriety tests at the scene into evidence. Appellant did not produce any evidence that would shift the burden to the state to prove that her prior license revocations were constitutionally obtained.

**Affirmed.**