*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1854**

Jeremy Ray Johnson, petitioner,
Appellant,

vs.

Commissioner of Public Safety,
Respondent.

**Filed May 11, 2015
Affirmed
Chutich, Judge**

Crow Wing County District Court
File No. 18-CV-14-1127

Richard Kenly, Backus, Minnesota (for appellant)

Lori Swanson, Attorney General, Elizabeth Oji, Assistant Attorney General, St. Paul,
Minnesota (for respondent)

Considered and decided by Connolly, Presiding Judge; Chutich, Judge; and

Kirk, Judge.

**U N P U B L I S H E D   O P I N I O N**

**CHUTICH**, Judge

Appellant Jeremy Johnson challenges the revocation of his driver's license.

Johnson argues that he was under arrest before taking field sobriety tests and that his

consent to the breath test was coerced. Because we conclude that Johnson was not under

arrest until after his field sobriety tests were taken and he voluntarily consented to the breath test, we affirm.

## FACTS

At 1:35 a.m. on March 20, 2014, while on patrol, Officer Ann Hunnicutt received a dispatch call that a truck had hit a mailbox and was stuck in a ditch. As Officer Hunnicutt approached the reported location, she saw a truck pulling out of the ditch. Officer Hunnicutt activated the emergency lights on her unmarked car, stopped, got out, and yelled "police—you need to stop." The truck stopped, and Officer Hunnicutt approached the driver's door.

After identifying the driver as Johnson, Officer Hunnicutt told him that she had stopped him because he appeared to be leaving the scene of an accident involving a damaged mailbox. Officer Hunnicutt detected the odor of alcohol coming from Johnson and observed that he had slow, slurred speech and bloodshot, watery eyes. When asked whether he had been drinking, Johnson initially said he had not but later said he had consumed two beers. Johnson admitted to hitting the mailbox, and damage on Johnson's truck corroborated that admission.

Officer Hunnicutt instructed Johnson to perform field sobriety tests, and Johnson complied. Officer Hunnicutt then asked Johnson to take a preliminary breath test and Johnson refused, at which point Officer Hunnicutt informed Johnson that she was arresting him for driving while impaired. Soon after, Johnson decided to comply with the preliminary breath test, which revealed an alcohol concentration of .158.

Officer Hunnicutt transported Johnson to the county jail, where she read him the implied consent advisory. Officer Hunnicutt asked Johnson if he understood, and he said that he did. Officer Hunnicutt then offered Johnson the opportunity to consult with an attorney, and he was able to speak with an attorney.

Afterwards, Officer Hunnicutt asked Johnson if he would consent to a breath test. Johnson asked a question about refusal to take the test. In response, Officer Hunnicutt reread item number 2 of the advisory, "Refusal to take the test is a crime." Johnson said that he understood. When Officer Hunnicutt asked Johnson again if he would consent to the test, he responded "yes." Officer Hunnicutt did not obtain a warrant for the test. The test revealed an alcohol concentration of .20 and the commissioner of public safety revoked Johnson's driver's license.

Johnson petitioned the district court to rescind his license revocation. The district court concluded that Officer Hunnicutt had reasonable and articulable suspicion to seize and probable cause to arrest Johnson for driving while impaired. The district court also concluded that Johnson had voluntarily consented to the breath test. As a result, the district court sustained the revocation of Johnson's license. Johnson appealed.

## D E C I S I O N

### I. De Facto Arrest

Johnson first argues that the results of his preliminary breath test and field sobriety tests should have been excluded because he was de facto under arrest from the time that Officer Hunnicutt instructed him to step out of his truck. The commissioner argues that Johnson waived his de facto-arrest argument by not raising it before the district court.

3

This court does not address issues on appeal that were not presented to and considered by the district court. *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988). An issue is not waived where the district court had the opportunity to consider the issue. *See Jacobson v. $55,900 in U.S. Currency*, 728 N.W.2d 510, 522-23 (Minn. 2007) (distinguishing the argument waived in *Thiele,* which was "never litigated below," from an argument raised on appeal that was a refined version of an argument raised below); *Thayer v. Am. Fin. Advisers, Inc.*, 322 N.W.2d 599, 604 (Minn. 1982) (holding that an issue is not proper for consideration on appeal where the trial court did not have the opportunity to consider the issue), *abrogated on other grounds by Onvoy, Inc. v. SHAL, LLC*, 669 N.W.2d 344 (Minn. 2003).

Here, Johnson did not waive the de facto-arrest issue because his post-hearing brief discussed the de facto-arrest issue. Although the district court order did not comment on this issue, the court had the opportunity to consider it because it was on the record when the district court issued its order.

Even considering Johnson's de facto-arrest argument, however, it is unconvincing under the circumstances present here. This court independently reviews the district court's conclusion as to whether a person is in custody at a given time. *State v. Mellett*, 642 N.W.2d 779, 787-88 (Minn. App. 2002), *review denied* (Minn. July 16, 2002). Whether a suspect is under arrest requires an objective inquiry into whether a reasonable person in the suspect's situation would have understood that he was in custody to the degree associated with an arrest. *Id.* at 787. General on-scene questions—including the questions "have you been drinking?" and "how much?"—do not convert a detention into

an arrest. *State v. Kline*, 351 N.W.2d 388, 390 (Minn. App. 1984). Nor is a detention necessarily converted to an arrest where the officer instructs the suspect to leave his car and instructs the suspect to take a preliminary breath test and to perform field sobriety tests. *State v. Herem*, 384 N.W.2d 880, 883 (Minn. 1986); *Mellett*, 642 N.W.2d at 788.

The audio recording of the interaction between Officer Hunnicutt and Johnson shows that Officer Hunnicutt did not use any special show of force that would make a reasonable person think Johnson was under arrest. Officer Hunnicutt spoke to Johnson in an authoritative but reasonable tone and asked him general questions about whether he had been drinking and where he was going. Officer Hunnicutt provided extensive instructions for the field sobriety tests she asked Johnson to perform and addressed Johnson as "sir." She did not handcuff Johnson or inform him that he was under arrest until after he refused to take the preliminary breath test. Given these facts, Johnson was not under arrest before Officer Hunnicutt informed him that he was under arrest. Accordingly, the district court properly admitted the results of the field sobriety tests and preliminary breath test.

## II.  Exception to Warrant Requirement

Johnson also argues that the results of his chemical breath test are inadmissible because they were the product of an unconstitutional search. The United States and Minnesota Constitutions guarantee the right to be secure against unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. 1, § 10. The taking of a breath test is a search. *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 616-17, 109 S. Ct. 1402, 1413 (1989). A search is generally unreasonable unless conducted under a warrant

issued upon probable cause. *Id.* at 619, 109 S. Ct. at 1414. Several exceptions apply to the warrant requirement, but Johnson asserts that the state did not establish that any exception applies here.

### A. Consent Exception

One exception to the warrant requirement is consent to the search. *State v. Diede*, 795 N.W.2d 836, 846 (Minn. 2011) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S. Ct. 2041, 2043-44 (1973)). For consent to be valid, the state must prove by a preponderance of the evidence that the defendant freely and voluntarily consented. *State v. Brooks*, 838 N.W.2d 563, 568 (Minn. 2013), *cert. denied*, 134 S. Ct. 1799 (2014).

Voluntary consent is that given "without coercion or submission to an assertion of authority" so that a reasonable person would feel free to decline law enforcement's requests or otherwise terminate the encounter. *State v. Dezso*, 512 N.W.2d 877, 880 (Minn. 1994); *see also Schneckloth*, 412 U.S. at 225-26, 93 S. Ct. at 2047 (stating that consent is involuntary if the suspect's "will has been overborne and his capacity for self-determination critically impaired"). "Whether consent was voluntary is determined by examining the totality of the circumstances, including the nature of the encounter, the kind of person the defendant is, and what was said and how it was said." *Diede*, 795 N.W.2d at 846 (quotations omitted).

The district court found that Johnson's consent to a breath test was voluntary. This court reviews the district court's finding of voluntariness under the clearly erroneous standard. *Id*. Clear error occurs when "we are left with the definite and firm conviction that a mistake occurred." *Id.* at 846-47.

Johnson's first argument challenging the voluntariness of his consent is that the implied consent advisory is necessarily coercive because it includes the warning that test refusal is a crime in Minnesota. This argument is without merit. Under *State v. Brooks*, a driver's consent to a chemical test may be voluntary even if the driver is informed that refusal to submit to testing is a crime because the implied-consent advisory states clearly that a person has a choice whether to submit to testing. 838 N.W.2d at 570-71.

Johnson's second argument is that the totality-of-the-circumstances test does not support the conclusion that Johnson's consent was voluntarily given. Johnson does not raise any specific error that the court made in applying the totality-of-the-circumstances test. Johnson merely asserts that Officer Hunnicutt's tone of voice and demeanor toward him created a coercive environment.

The district court's order thoroughly discussed each prong of the totality-of-the-circumstances test, comparing the facts of Johnson's case to the facts that the *Brooks* court used to support a finding of voluntary consent. In reaching the conclusion that Johnson voluntarily consented to the test, the district court emphasized that (1) Johnson had an opportunity to speak with an attorney; (2) Officer Hunnicutt correctly read Johnson the implied-consent advisory; and (3) Officer Hunnicutt's actions and demeanor toward Johnson were appropriate. Our review of the record, including listening to the audio recording of the initial encounter between Johnson and Officer Hunnicutt, does not lead us to conclude that the district court erred by finding that Johnson voluntarily consented to the breath test.

## B.        *Search-Incident-to-Arrest Exception*

Another exception to the warrant requirement is for searches incident to a lawful arrest.  In *State v. Bernard,* the supreme court recently held that "a warrantless breath test does not violate the Fourth Amendment because it falls under the search-incident-to-a-valid-arrest exception."  859 N.W.2d 762, 767 (Minn. 2015).  Here, as in *Bernard*, the officer had probable cause to arrest Johnson for driving while impaired.  Under *Bernard*, the search-incident-to-arrest exception also justified giving Johnson a breath test without first securing a warrant.

**Affirmed.**