*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1922**

State of Minnesota,
Respondent,

vs.

Xa Vang,
Appellant.

**Filed October 24, 2016
Affirmed
Smith, Tracy M., Judge**

Ramsey County District Court
File No. 62SU-CR-15-147

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Patrick J. Kelly, Little Canada City Attorney, Martin H.R. Norder, Assistant City Attorney, Kelly & Lemmons, P.A., St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Suzanne M. Senecal-Hill, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Smith, Tracy M., Presiding Judge; Larkin, Judge; and Rodenberg, Judge.

**UNPUBLISHED OPINION**

**SMITH, TRACY M.**, Judge

Appellant Xa Vang challenges his conviction for refusal to submit to a chemical test for intoxication, arguing (1) the evidence is insufficient to prove that Vang refused to submit to testing; (2) the district court erred in preventing Vang from arguing that his

refusal was reasonable; (3) the district court erred in admitting the implied consent peace officer's certificate, which contains hearsay; and (4) Minnesota's criminal test-refusal statute is unconstitutional. Because the evidence is sufficient to prove refusal, the district court did not abuse its discretion in preventing argument on reasonable refusal, any error in admitting the peace officer's certificate was harmless, and the test-refusal statute is not unconstitutional, we affirm.

## FACTS

At approximately 3:15 a.m. on January 10, 2015, Ramsey County Sheriff's Department Deputy Mark Suchy was driving northbound on Rice Street in Little Canada, Minnesota, when he saw a car in front of him going over the solid white line on the right side of the road. The driver made a right turn without signaling. The driver then turned into the parking lot of several closed businesses, again without signaling, and parked the car. The deputy followed the car into the lot and saw the driver, Vang, exit the car, walk up to the door of a closed business, and then walk back toward the car.

The deputy exited his vehicle and asked Vang what he was doing. Vang said he was there to get insurance from his uncle. The deputy observed that Vang had red and watery eyes, smelled of alcohol, and was "unsteady on his feet" at times. The deputy looked up Vang's driver's license number and found that Vang's license had been revoked. The deputy then activated his squad camera and administered field sobriety tests. After determining that Vang's performance on the three field sobriety tests indicated intoxication, the deputy began asking Vang repeatedly to take a preliminary breath test to measure alcohol concentration.

2

Vang did not agree to take the preliminary breath test, but he did not explicitly decline. Instead, Vang insisted that he had not been drinking, asked why he would want to "blow in that," said his lawyer told him he didn't have to take the test, and asked the deputy to "go easy on" him. The deputy told Vang he would arrest him if he didn't submit to the preliminary breath test, but Vang continued to avoid providing a breath sample. The deputy arrested Vang and transported him to the Ramsey County Jail.

At the jail at 3:54 a.m., the deputy read to Vang, in English, the implied consent advisory, which said that Vang was required to take a test to determine if he was under the influence of alcohol. The deputy asked Vang if he understood the advisory. Vang's response was: "Need a Hmong translator." The deputy said, "Okay, I can get you one. Although actually, you know, I won't, because I'm not required to so I'm just going to keep going." After declining to provide an interpreter, the deputy asked if Vang wished to consult with an attorney. Vang said, "No." The deputy then asked Vang twice if he would take a breath test. Vang responded, "Need a Hmong translator." The deputy again asked if Vang would take a test, and then asked four times what Vang's reason was for refusing. Vang repeated four more times that he needed an interpreter. At 3:57 a.m., the deputy asked Vang a second time if he would like to speak with an attorney. Vang said, "I want to talk to an attorney," but he did not attempt to call anyone after he was offered a phone and phone books. Instead, Vang continued to insist that he needed a Hmong interpreter. At 4:08 a.m., the deputy decided that Vang had had a reasonable amount of time and had chosen not to call an attorney. The deputy told Vang he had "[o]ne more chance, do you want to take a test, do you want to call an attorney, or are you done?"

3

Vang replied, "Need a Hmong translator." At 4:19 a.m., the deputy concluded that Vang had refused to submit to a breath test.

Vang was charged with second-degree test refusal and second-degree driving while impaired. A jury found Vang guilty of refusal to submit to testing and not guilty of driving while impaired.

Vang appeals.

## D E C I S I O N

## I.

## Sufficiency of the Evidence

Vang argues that the evidence presented at trial was insufficient to prove beyond a reasonable doubt that Vang refused to submit to a breath test. The essence of Vang's argument is that he did not understand English well enough to have meaningfully refused the test and that his asking for a language interpreter did not amount to refusal.[1]

To establish test refusal, the state must prove some "volitional act" by the defendant showing "[a]ctual unwillingness to submit to testing." *State v. Ferrier*, 792 N.W.2d 98, 101 (Minn. App. 2010), *review denied* (Minn. Mar. 15, 2011). Refusal may be shown by "any indication of actual unwillingness . . . as determined from the driver's words and actions in light of the totality of the circumstances." *Id.* at 102. A defendant's

---

[1] Vang asserts on appeal that he should have been provided an interpreter under Minn. Stat. §§ 611.31, 611.32 (2014). Vang did not, however, challenge this alleged statutory violation in a pretrial motion alleging deprivation of his rights. *See State v. Kail*, 760 N.W.2d 16 (Minn. App. 2009) (reversing a pretrial suppression order based on the defendant's claim that his section 611.31 right to an interpreter had been violated). Instead, Vang argues on appeal that the evidence, which included his repeated requests for an interpreter, was insufficient to support a criminal test-refusal conviction, and that is the argument we address.

failure to respond to an officer's request to take a test constitutes a refusal to submit to testing "where there is no indication the driver is incapable of refusal." *State v. Hagen*, 529 N.W.2d 712, 714 (Minn. App. 1995).

The standard of review for sufficiency-of-the-evidence claims depends on whether the challenged element was proved by circumstantial or direct evidence. In a criminal test-refusal case in which the defendant did not expressly refuse, the state must prove refusal by relying on inferences from the circumstances. *Ferrier*, 792 N.W.2d at 102. A conviction based on circumstantial evidence attracts greater scrutiny on review than a conviction based on direct evidence. *State v. Al-Naseer*, 788 N.W.2d 469, 473 (Minn. 2010). Vang did not expressly refuse the test here, so the heightened standard applies.

For sufficiency-of-the-evidence challenges involving circumstantial evidence, we first identify the circumstances proved, deferring to the jury's acceptance of the inculpatory evidence and rejection of conflicting evidence. *State v. Silvernail*, 831 N.W.2d 594, 598-99 (Minn. 2013). We "construe conflicting evidence in the light most favorable to the verdict and assume the jury believed the [s]tate's witnesses and disbelieved defense witnesses." *Id.* at 599. Sufficient evidence exists if the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis other than guilt. *Id.*

Construing the evidence in the light most favorable to the verdict, we find that the following circumstances have been proved. Prior to the arrest and the reading of the implied consent advisory, Vang conversed with the deputy in English and followed directions given in English during field sobriety tests. Vang demonstrated some

5

understanding of what was going on by making reference to his two prior DWI convictions, asking "[w]hy would I want to blow in that," and saying a lawyer had told him he did not have to submit to a breath test. After the arrest and the reading of the implied consent advisory, Vang suddenly stopped speaking English except to repeat the phrase, "Need a Hmong translator." The deputy did not seek an interpreter because he believed that he was not required to provide one and that Vang understood him. Despite being given the opportunity, Vang made no attempt to call an attorney during the 25 minutes that passed between the reading of the advisory and the time when the deputy determined Vang had refused to submit to a test.

Vang argues that his requests for an interpreter did not amount to refusal because he did not understand the implied consent advisory and did not understand what the deputy was asking him to do. Vang testified that he speaks only "a little" English, and that he has difficulty understanding English, especially when he is nervous, tired, or uncomfortable. However, the evidence from the stop prior to the arrest showed that Vang communicated effectively in English. He told the deputy, "I did not drink" and "I don't even drink." He asserted that he did not have to take a preliminary breath test, which the deputy confirmed. Vang then insisted he could not be arrested if he did not take a preliminary breath test, stating,

> My lawyer say I don't have to take a test.
>     . . . .
>
> I don't really have to, all right? No matter what I don't have to, all right. I got out of my car—you're just going to— you're just going to pull me over because of what, you think I'm drinking? I'm not drinking, all right?
>     . . . .

6

> How would I be arrested?  You did not—you did not caught
> me on driving, drunk driving, all right?

He pleaded with the deputy not to proceed, saying, "Come on, man, I—I have a second time, I—I went to court for that, all right?" and "Come on, officer, go easy on me."  Vang's argument that he did not understand English well enough to know that he was required to take a breath test at the jail and that he was refusing to submit to testing is not reasonable.  We conclude that the circumstances proved are consistent with Vang's guilt and "inconsistent with any rational hypothesis except that of guilt."  *Al-Naseer*, 788 N.W.2d at 474-75 (quotation omitted).  The evidence is therefore sufficient to support Vang's conviction for test refusal.  *Id.*

## II.

### Reasonable Refusal Defense

Vang argues that the district court excluded evidence that his refusal was reasonable, thereby violating his constitutional right to present a complete defense.

*Standard of Review*

We begin with the standard of review.  Before trial, the state brought a motion in limine to prohibit Vang from arguing that his refusal to submit to the test was reasonable.  The district court granted the state's motion, reasoning that reasonableness in refusing is not mentioned in the statute and is not an element of the jury instructions.  On appeal, Vang challenges the district court's ruling as a violation of his constitutional right to present a complete defense.  Vang contends that the applicable standard of review is whether the district court clearly abused its discretion by erroneously excluding relevant

7

evidence and whether the error was harmless beyond a reasonable doubt. *State v. Blom*, 682 N.W.2d 578, 622-23 (Minn. 2004); *State v. Amos*, 658 N.W.2d 201, 203 (Minn. 2003).

Vang, however, does not identify any evidence he intended to present that the district court excluded. He argues that the jury may have found his refusal reasonable based on the number of times Vang asked for an interpreter and Vang's explanation for why he asked for an interpreter. However, Vang was allowed to testify regarding his requests for an interpreter and his limited understanding of English at trial, and defense counsel was permitted to argue that the deputy effectively did not read the implied consent advisory because he read it only in a language Vang did not understand. Because Vang identifies no evidence that was excluded, the standard of review regarding an evidentiary decision is not apt.

Rather, the more appropriate framework for reviewing the district court's ruling is whether the jury instructions in this case should have included the affirmative defense of reasonable refusal. Although Vang did not request an instruction on reasonable refusal, the district court's ruling on the state's motion, which prohibited him from arguing that his refusal was reasonable, effectively denied an instruction on reasonable refusal.

We review jury instructions "in their entirety to determine whether they fairly and adequately explained the law of the case." *State v. Heiges*, 779 N.W.2d 904, 913 (Minn. App. 2010), *aff'd* 806 N.W.2d 1 (Minn. 2011) (quotation omitted); *see State v. Holmberg*, 527 N.W.2d 100, 106 (Minn. App. 1995), *review denied* (Minn. Mar. 21, 1995). "Determining whether a jury instruction should be given lies within the discretion of the

8

district court and will not be reversed but for an abuse of that discretion." *State v. Hall*, 764 N.W.2d 837, 846 (Minn. 2009) (quotation omitted). A district court abuses its discretion if it "refuse[s] to give an instruction on the defendant's theory of the case if there is evidence to support it." *State v. Johnson*, 719 N.W.2d 619, 629 (Minn. 2006) (quotation omitted).

*Availability of a Reasonable-Refusal Defense*

Under Minnesota's implied-consent statute, subject to certain conditions, "[a]ny person who drives, operates, or is in physical control of a motor vehicle within this state . . . consents . . . to a chemical test of that person's blood, breath, or urine for the purpose of determining the presence of alcohol." Minn. Stat. § 169A.51, subd. 1(a) (2014). Under the criminal test-refusal statute, "[i]t is a crime for any person to refuse to submit to a chemical test of the person's blood, breath, or urine under section 169A.51 (chemical tests for intoxication) or 169A.52 (test refusal or failure; revocation of license)." Minn. Stat. § 169A.20, subd. 2. An affirmative defense of "reasonable grounds" for refusal appears in section 169A.53, subdivision 3(c), which is part of the implied-consent statute. However, neither a reasonable-refusal defense nor section 169A.53 is referenced in the criminal test-refusal statute under which Vang was convicted.

Vang asks us to read into section 169A.20 an incorporation of section 169A.53 based largely on a statement this court made in *State v. Olmscheid*, that the criminal test-refusal statute "incorporates to some degree the provisions of the implied consent statute into the crime of refusal." 492 N.W.2d 263, 265 (Minn. App. 1992). However, the court in *Olmscheid* expressly declined to decide whether or how reasonable refusal applies in

9

criminal test-refusal cases. *Id.* at 266 n.2. Furthermore, there is no reported Minnesota appellate decision holding that the district court is required to allow an affirmative defense of reasonable refusal in a criminal test-refusal case.

Vang also cites *State v. Johnson* as support for his argument that a reasonable refusal defense is available under the criminal test-refusal statute. 672 N.W.2d 235 (Minn. App. 2003), *review denied* (Minn. Mar. 16, 2014). In *Johnson*, this court considered whether the district court committed plain error by including a potentially confusing example of what reasonable refusal might look like in a jury instruction on the affirmative defense of reasonable refusal. 672 N.W.2d at 242. The court held that the jury instruction "did not contain an error of fundamental law" and that the district court did not abuse its discretion in giving that instruction. *Id.* at 243. The issue of whether a defendant is actually entitled to argue reasonable refusal in a criminal test-refusal case was not reached in that case.

A reasonable-refusal instruction was not warranted here. *See Holmberg*, 527 N.W.2d at 106 ("An instruction need not be given if it is not warranted by either the facts or the relevant case law."). None of the cases relied on by Vang hold that a driver is entitled to a jury instruction on reasonable refusal under the criminal test-refusal statute. *See Johnson*, 672 N.W.2d at 242 (holding narrowly that an instruction on reasonable refusal was not an abuse of discretion); *Olmscheid*, 492 N.W.2d at 266 n.2 (declining to decide whether or how reasonable refusal applies in criminal test-refusal cases). Moreover, the district court instructed the jury regarding the elements of the offense and permitted the defense to argue that the elements of the offense were not met because

10

Vang did not understand English sufficiently to understand the advisory and the state refused his request to provide an interpreter. Viewing the jury instructions in their entirety, we conclude that they "fairly and adequately explained the law of the case." *Heiges*, 779 N.W.2d at 913. We therefore conclude that the district court's ruling on the motion in limine—precluding argument on reasonable refusal while permitting argument on Vang's claimed need for interpreter—was not an abuse of discretion. *Id.*

### III.

### Hearsay

Vang argues that the district court erred in admitting into evidence the implied consent peace officer's certificate because it is a police report that contains hearsay. The district court ruled, and the state contends, that the certificate did not contain inadmissible hearsay statements because the arresting deputy testified at trial regarding each fact noted on the certificate.

"Evidentiary rulings rest within the sound discretion of the [district] court and will not be reversed absent a clear abuse of discretion." *Amos*, 658 N.W.2d at 203. Where an error does not implicate a constitutional right, the defendant bears the burden of demonstrating that a new trial is required because the error substantially influenced the jury's verdict. *State v. Sanders*, 775 N.W.2d 883, 887 (Minn. 2009). When determining whether erroneously admitted evidence significantly affected the verdict, the reviewing court considers: "(1) the manner in which the [s]tate presented the testimony; (2) whether the testimony was highly persuasive; (3) whether the [s]tate used the

11

testimony in closing argument; and (4) whether the defense effectively countered the testimony." *State v. Peltier*, 874 N.W.2d 792, 802 (Minn. 2016).

At trial, Vang objected that the implied consent peace officer's certificate was duplicative of the deputy's testimony and therefore should be excluded under Minnesota R. Evid. 403. On appeal, Vang argues that the certificate is inadmissible hearsay under Minn. R. Evid. 802. He argues that the statement does not fall within the public-records hearsay exception of Minn. R. Evid. 803(8), because that rule excludes police reports in criminal cases. Minn. R. Evid. 803(8)(B). Although that may be true, the fact that the certificate cannot be admitted under the public-records exception does not preclude the possibility that it is admissible under a different rule of evidence.

Neither the state nor the district court specified which provision of the evidence rules permits admission of the certificate as an exhibit. The state argued at trial that the certificate should be admitted because the deputy testified to the observations noted on the certificate. The district court then ruled that the certificate was admissible without providing an explanation. The state's argument that the deputy testified to the observations and Vang's argument that the certificate is duplicative of the deputy's testimony lead us to infer that the certificate may have been admitted as a prior consistent statement of a testifying witness, which is admissible nonhearsay under Minn. R. Evid. 801(d)(1)(B).

"[A] witness's prior statement that is consistent with his trial testimony is admissible as nonhearsay evidence if the statement is helpful to the trier of fact in evaluating the witness's credibility, and if the witness testifies at trial and is subject to

cross-examination about the statement." *State v. Bakken*, 604 N.W.2d 106, 108-09 (Minn. App. 2000) (citing Minn. R. Evid. 801(d)(1)(B)), *review denied* (Minn. Feb. 24, 2000). Before a statement may be admitted under rule 801(d)(1)(B), the district court must first make a "threshold determination" that the witness's credibility has been challenged. *Id.* at 109 (citing *State v. Nunn*, 561 N.W.2d 902, 908-09 (Minn. 1997)). The district court must then inquire into whether the out-of-court statement was consistent with the witness's trial testimony. *Id.* Finally, the district court must evaluate whether the statement would "be helpful to the trier of fact in evaluating the witness's credibility." *Id.*

The district court did not follow the *Bakken* steps in deciding to admit the certificate. Even if that constituted error, however, Vang is not entitled to reversal because admitting the certificate did not substantially influence the verdict and therefore was harmless. *State v. Brown*, 455 N.W.2d 65, 69 (Minn. App. 1990) (holding that this court will not reverse unless the district court's erroneous evidentiary ruling substantially influenced the jury to convict), *review denied* (Minn. July 6, 1990).

The implied consent peace officer's certificate is a form filled out by the arresting deputy shortly after the incident. The certificate states that the deputy had probable cause to believe Vang was violating the DWI law and contains several checkboxes used to indicate details of the stop and to show why the officer believed there was probable cause. The deputy testified at trial regarding each of the factual details on the certificate, so the admission of the certificate did not result in the jury receiving any facts it otherwise would not have received. The only statement from the certificate that the

13

deputy did not directly reiterate in his testimony is the statement that he "had probable cause," which is the legal conclusion toward which most of the other statements on the certificate are directed. The certificate was not emphasized by the state; it was the subject of only brief testimony by the deputy and was never mentioned again, including in the state's closing argument. In addition, Vang cross-examined the deputy regarding the facts asserted in the certificate and challenged the deputy's account in his closing argument. Finally, although Vang argues that admitting the certificate into evidence "invaded the jury's role of determining whether the state proved" the probable cause element of the crime, Vang does not argue on appeal that the deputy actually lacked probable cause or that the state failed to prove the probable cause element. Even assuming an error in admitting the certificate, Vang has not demonstrated that the error substantially influenced the jury's verdict. *Sanders*, 775 N.W.2d at 887.

## IV.

## Constitutional Arguments

Vang argues for the first time on appeal that Minnesota's criminal test-refusal statute violates state and federal constitutional rights to due process of law and violates the doctrine of unconstitutional conditions by criminalizing a driver's refusal to consent to a warrantless search.

This court normally will not decide an issue that is raised for the first time on appeal, including constitutional questions in criminal cases. *Roby v. State*, 547 N.W.2d 354, 357 (Minn. 1996); *State v. Sorenson*, 441 N.W.2d 455, 457 (Minn. 1989). Because Vang failed to challenge the constitutionality of the test-refusal statute at the district court

14

level, he has forfeited the constitutionality challenge and that issue is not properly before this court. *State v. Beaulieu*, 859 N.W.2d 275, 278 (Minn. 2015).

In any event, we note that even if the constitutionality of the test-refusal statute had been properly raised, Vang's due-process argument would fail in light of the U.S. Supreme Court's decision in *Birchfield v. North Dakota*, 136 S. Ct. 2160 (2016), and his unconstitutional-conditions argument would fail under *State v. Bennett*, 867 N.W.2d 539 (Minn. App. 2015), *review denied* (Minn. Oct. 28, 2015).

**Affirmed.**