**STATE of Minnesota, Respondent**

v.

**Todd OUELLETTE, Appellant.**

No. A06–1727.

Court of Appeals of Minnesota.

Oct. 23, 2007.

Lori Swanson, Attorney General, St. Paul, MN; and Bruce A. Nelson, Assistant Winona City Attorney, Winona, MN, for respondent.

John M. Stuart, Minnesota Public Defender, Rochelle R. Winn, Assistant Public Defender, Minneapolis, MN, for appellant.

Considered and decided by WRIGHT, Presiding Judge; SHUMAKER, Judge; and STONEBURNER, Judge.

## OPINION

STONEBURNER, Judge.

Appellant challenges his conviction of refusal to submit to chemical testing, asserting that the district court committed an error of fundamental law by failing to instruct the jury that it must find that he was lawfully arrested and that the implied consent advisory was read to him. Appellant also challenges his conviction of a lane violation, asserting that the evidence does not support the conviction.

## FACTS

Appellant Todd Damase Ouellette was stopped for traffic violations and subsequently arrested for driving while impaired (DWI). At the police station, Ouellette initially agreed to take a urine test but then stated that he would not take the test at that time. Ouellette was charged with DWI, refusal to test, running a red light, and improper lane usage. At trial, the district court instructed the jury on the refusal to test charge according to the pattern instructions in 10A *Minnesota Practice* CRIMJIG 29.28 (1999). Ouellette did not object to the instructions or propose additional instructions. The jury convicted Ouellette of refusal to test, running a red light, and improper lane change. The jury acquitted him of DWI. This appeal, challenging the convictions of refusal to test and improper lane usage, followed.

## ISSUES

1. Are the conditions for requesting a chemical test, set forth in Minn.Stat. § 169A.51, subds. 1(b), 2 (2006), elements of the crime of refusal to test that must be submitted to the jury?

2. Was omission of instructions on elements of a crime harmless error in this case?

3. Is the evidence that appellant proceeded straight from a designated left-turn lane sufficient to support a conviction of improper lane usage under Minn.Stat. § 169.18, subd. 7(b) (2002)?

## ANALYSIS

■■■ "A defendant's failure to propose specific jury instructions or to object to instructions before they are given to the jury generally constitutes a waiver of the right to appeal." *State v. Cross*, 577 N.W.2d 721, 726 (Minn.1998). "Nevertheless, a failure to object will not cause an appeal to fail if the instructions contain plain error affecting substantial rights or an error of fundamental law." *Id.*; *see also* Minn. R.Crim. P. 31.02.

■■■ Essential elements of a crime must be decided by the factfinder and by proof beyond a reasonable doubt. *State v. Bluhm*, 457 N.W.2d 256, 259 (Minn.App. 1990), *aff'd in part, rev'd in part on other grounds*, 460 N.W.2d 22, 24 (Minn.1990). "[A defendant] is entitled to have all the elements of the offense with which he is charged submitted [to the jury] even if the evidence relating to these elements is uncontradicted." *State v. Carlson*, 268 N.W.2d 553, 560 (Minn.1978).

Ouellette claims that the district court, in instructing the jury on the charge of refusal to test, committed an error of fundamental law by failing to instruct the jury to determine whether he had been lawfully arrested for DWI and whether the implied-consent advisory had been read to him. Ouellette argues that these prerequisites to a request to test under Minn. Stat. § 169A.51 (2002) are incorporated

into the criminal-refusal statute, Minn. Stat. § 169A.20, subd. 2 (Supp. 2003), and therefore are elements of the crime of refusal to test. We agree.

Failure to instruct on an essential element of a crime has been held to be fundamental error. *State v. Williams*, 324 N.W.2d 154, 157 (Minn.1982) (holding that failure to instruct on the element of intent to defraud in prosecution for theft by false representation is an error of fundamental law or controlling principle permitting review despite failure to object to instructions). Therefore, Ouellette is entitled to appellate review despite his failure to object to the instructions at trial.

## I.

The criminal-refusal statute provides that "[i]t is a crime for any person to refuse to submit to a chemical test of the person's blood, breath, or urine under section 169A.51." Minn.Stat. § 169A.20, subd. 2 (2006). The implied-consent statute provides that a chemical test of a person's blood, breath or urine, for the purpose of determining the presence of alcohol, controlled substances, or hazardous substances, may be required of a person when an officer has probable cause to believe the person has committed DWI, and one of the following conditions exists:

(1) the person has been lawfully placed under arrest for [DWI];

(2) the person has been involved in a motor vehicle accident or collision resulting in property damage, personal injury, or death;

(3) the person has refused to take the screening test . . . ; or

(4) the screening test was administered and indicated an alcohol concentration of 0.08 [1] or more.

§ 169A.51, subd. 1(b)(4) (2002). The statute was amended in 2004.

---

1. In 2002, the statute required an alcohol concentration of 0.10 or more. Minn.Stat.

Minn.Stat. § 169A.51, subd. 1(b) (2006). The implied-consent statute further provides that, at the time a test is requested, the person must be informed of specific information set out in the statute. Minn. Stat. § 169A.51, subd. 2(1)-(4). This information is contained in the commonly used implied-consent advisory form.

In *State v. Olmscheid*, 492 N.W.2d 263, 265 (Minn.App.1992), we held that the criminal-refusal statute "incorporates to some degree the provisions of the implied consent statute into the crime of refusal."[2] In *Olmscheid*, as here, the district court instructed the jury on refusal to test using the pattern jury instruction. At the time *Olmscheid* was decided, the pattern instruction listed the elements of refusal to test as:

> First, defendant was requested by a peace officer to submit to a chemical test of defendant's (blood) (breath) (urine) under the Implied Consent Law.
>
> Second, defendant refused to submit to the test.
>
> Third, (once within the past five years) (twice or more within the past ten years) defendant's drivers license had been (suspended) (revoked) (cancelled) (denied) for _____.[3]
>
> Fourth, defendant's act took place on (or about) ____, in ____ County.

10A *Minnesota Practice* CRIMJIG 29.17.02 (1992). The district court, at Olmscheid's request, also required the state to prove that the peace officer had probable cause to believe that Olmscheid was in physical control of the vehicle, placing a burden on the state which would not have been placed on it under the pattern instruction. *Olmscheid*, 492 N.W.2d at 265.

We concluded that the district court was correct in placing the burden on the state of proving beyond a reasonable doubt that the officer had probable cause to believe that Olmscheid was in physical control of the vehicle because absent probable cause to believe the driver has committed DWI a refusal to submit to a chemical test is not a crime. *Id.* at 265–66. In dictum, we also concluded that "a driver must have been read the implied consent advisory in order to have criminally refused chemical testing," making the reading of the implied-consent advisory an element of the crime. *Id.* The actual holding of *Olmscheid* is that, notwithstanding the incorporation of some provisions of the implied-consent statute into the criminal-refusal statute, proof of actual driving, operation or physical control of a vehicle is not incorporated into the criminal-refusal statute as an element of the crime because the criminal-refusal statute only requires that a peace officer have probable cause to believe that the defendant committed such activity. *Id.* at 266.

The current CRIMJIG on refusal to test includes the probable-cause requirement recognized in *Olmscheid*. 10A *Minnesota Practice* CRIMJIG 29.28 (2006). In the present case, the jury was instructed that the elements of refusal to submit to testing are:

> First, the peace officer had probable cause to believe that the defendant drove, operated, or was in physical control of a motor vehicle while under the influence of alcohol. Probable cause means that it was more likely than not that the defendant drove, operated or

---

**2.** *Olmscheid* interpreted Minn.Stat. § 169.121 (1990), and Minn.Stat. § 169.123 (1990), the substance of which are now found in Minn. Stat. § 169A.20 (2006) and Minn.Stat. § 169A.51 (2006) respectively.

**3.** This provision is no longer an element of the crime of test refusal. *See* Minn.Stat. § 169A.20, subd. 2 (2002).

was in physical control of a motor vehicle while under the influence of alcohol.

Second, the defendant was requested by a peace officer to submit to [a] chemical test of his blood or urine.

Third, the defendant refused to submit to the test.

Fourth, the defendant's act took place on or about March 11, 2004, in Winona County.

■ Because a peace officer can only request a chemical test under Minn.Stat. § 169A.51, when one of the conditions listed in subdivision 1(b) exists, and because section 169A.51, subdivision 2, requires that the implied-consent advisory must be given at the time the test is requested, we now hold that these prerequisites to the administration of a chemical test are incorporated into, and are elements of the criminal-refusal statute on which the jury must be instructed. Here, the only relevant subdivision 1(b) condition applicable is that Ouellette was lawfully arrested. The district court committed an error of fundamental law by failing to instruct the jury that it must find that the state had proved beyond a reasonable doubt that Ouellette was lawfully arrested and that the implied-consent advisory was read to him. We recognize that there is some redundancy in requiring the jury to find both probable cause and that a defendant was lawfully arrested, but the redundancy is contained in the implied-consent statute itself.

## II.

■ When a defendant fails to request a jury instruction that the district court is obligated to give, the erroneous omission is properly viewed under the harmless-error analysis. *State v. Moon*, 717 N.W.2d, 429, 437 (Minn.App.2006). An error is harmless if all relevant factors indicate that, beyond a reasonable doubt, the error did not have a significant impact on the verdict. *State v. Shoop*, 441 N.W.2d 475, 480–81 (Minn.1989). If the error might have prompted the jury to reach a harsher verdict than it might otherwise have reached, the defendant is entitled to a new trial. *Id.* at 481.

■ Ouellette argues that the district court's failure to instruct the jury on the two omitted elements was "obviously prejudicial to his case." We disagree. The officer testified that he read the implied-consent advisory to Ouellette, and a copy of the advisory with the officer's notations of Ouellette's answers to his questions was admitted into evidence. Ouellette testified that he remembered the officer "talking about it" but did not remember that the officer had a piece of paper in his hand. Based on the evidence in this record, we conclude that, beyond a reasonable doubt, failure to instruct the jury on the reading of the implied-consent advisory was harmless error.

■ Ouellette asserts that because he was successful in convincing the jury that he was not impaired, had the jury been properly instructed on the elements of refusal to test, they could have found that the state also failed to prove that he had been lawfully arrested for DWI. But the officer testified that he arrested Ouellette and took him into custody, and the jury found that the officer had probable cause to arrest Ouellette for DWI. Any error in omitting the redundant element of lawful arrest in this case was harmless beyond a reasonable doubt.

## III.

■ Ouellette argues that the evidence in the record does not support his conviction under Minn.Stat. § 169.18, subd. 7(b) (2002), which states in relevant part:

Upon a roadway which is not a one-way roadway and which is divided into

three lanes, a vehicle shall not be driven in the center lane except when overtaking and passing another vehicle where the roadway is clearly visible and such center lane is clear of traffic within a safe distance, or in preparation for a left turn or where such center lane is at the time allocated exclusively to traffic moving in the direction the vehicle is proceeding, and is signposted to give notice of such allocation.

When considering a claim of insufficient evidence, this court's review is limited to a careful analysis of the record to determine whether the evidence, when viewed in a light most favorable to the conviction, is sufficient to allow the jurors to reach a guilty verdict. *State v. Webb*, 440 N.W.2d 426, 430 (Minn.1989). A guilty verdict requires reversal only where the jury, after giving due regard to the presumption of innocence and the state's burden of proof, could not reasonably find the defendant guilty of the charged offense. *State v. Thomas*, 590 N.W.2d 755, 758 (Minn.1999).

Here, during the discussion of jury instructions, the state noted that the roadway on which Ouellette was traveling does not have a center lane as described by the statute. The officer and Ouellette both testified that, at the area where the alleged violation occurred, the street has a right-turn lane, a left-turn lane, and a lane for continuing straight. The violation described by the officer was that Ouellette was in the left-turn lane but continued straight rather than turning left. The violation described, therefore, does not support a conviction for misuse of a center lane as described in the statute, and we conclude that the jury could not have rea-

sonably found a violation of the offense charged. Ouellette's conviction of improper lane usage is therefore reversed.

## IV.

In a pro se supplemental brief, Ouellette raised a number of issues that are not supported by citation to the record or authority, and some of which are unrelated to his convictions. Assignment of error based on "mere assertion" and not supported by argument or authority is waived unless prejudicial error is obvious on mere inspection. *State v. Modern Recycling, Inc.*, 558 N.W.2d 770, 772 (Minn. App.1997). Because we find no obvious error related to Ouellette's convictions, we consider these arguments waived.

## D E C I S I O N

The district court committed an error of fundamental law by failing to include in the jury instructions on refusal to test that the state was required to prove that Ouellette was lawfully arrested and that the implied-consent advisory was read to him. But under these circumstances, the error was harmless beyond a reasonable doubt. Ouellette's conviction of refusal to test is affirmed. The record does not support Ouellette's conviction of improper use of a center lane, and that conviction is reversed.

**Affirmed in part and reversed in part.**