*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1010**

State of Minnesota,
Respondent,

vs.

Daniel Gary Mason,
Appellant.

**Filed April 13, 2015
Affirmed
Chutich, Judge**

Hennepin County District Court
File No. 27-CR-13-6648

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Linda M. Freyer, Assistant County
Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Lydia Villalva Lijó, Assistant
Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Chutich, Presiding Judge; Rodenberg, Judge; and
Reyes, Judge.

**U N P U B L I S H E D   O P I N I O N**

**CHUTICH**, Judge

Appellant Daniel Mason appeals his conviction of first-degree test refusal,
contending that the district court committed plain error in instructing the jury on the

elements of the charge and abused its discretion by crafting an argumentative and unnecessary instruction regarding his defense. He also argues that the test-refusal statute is unconstitutional. Because the district court properly instructed the jury and because the statute is constitutional, we affirm.

## FACTS

In February 2013, Minnetonka Police Officer Corey Schmidt was on patrol around 9:00 p.m. when he received a dispatch about a possible drunk driver on Excelsior Boulevard. The information concerned a suspected drunk driver who pulled into an Enterprise car rental lot just off Excelsior, got out of the car, and urinated. Officer Schmidt did not see any occupied or running cars in the lot when he arrived. It had snowed that afternoon, but Officer Schmidt did not see any tire tracks in the Enterprise lot. But past Enterprise, in the same parking lot, Officer Schmidt saw a car in front of Sunshine Car Wash with its headlights on. Officer Schmidt noticed tire tracks in the snow-covered lot as if the car had just pulled in, and he also saw snow underneath the car but no snow on it.

As Officer Schmidt approached the car, he noticed a man in the passenger seat but no one in the driver's seat. He then saw a man swaying back and forth and attempting to unlock a door to the car wash. He identified this man as appellant Daniel Mason. Officer Schmidt smelled alcohol and urine on Mason and noticed that Mason had a large wet spot on the front of his pants.

Mason told Officer Schmidt that he had been drinking that night at the VFW and that he stopped at the car wash, his place of employment, to pick up some beer. Based on

2

the tracks in the lot, the cold weather, and the distance from the bar to the car wash, Officer Schmidt believed that Mason had driven from the bar to the car wash. Officer Schmidt asked if Mason would take a field sobriety test. Mason indicated that he would, but that it would not go well. Officer Schmidt was not sure that Mason could safely complete the test, and he also did not know if Mason's answer meant that he would physically resist the test. Based on Mason's slurred speech, odor of alcohol, and red eyes, Officer Schmidt arrested Mason for driving while impaired.

Officer Schmidt took Mason to the Minnetonka Police Department where he read Mason the implied-consent advisory. Mason said that he wanted to speak to an attorney, and Officer Schmidt provided him with a telephone and phonebooks. Mason called his mother and then said they could continue the process. When Officer Schmidt asked Mason to take a breath test, Mason again said he wanted to talk to an attorney; Officer Schmidt again gave Mason a telephone and phonebooks. Mason made no attempt to call anyone, however. About 19 minutes later, Officer Schmidt asked Mason to take a breath test for the third time; Mason again asked to talk to an attorney. Officer Schmidt treated this request as a test refusal. Mason was charged with first-degree driving while impaired-test refusal. *See* Minn. Stat. § 169A.20, subd. 2 (2012).

At trial, Mason testified that he had worked at the car wash that day until around noon, and then he and a friend went to a casino and then to the VFW. When Mason ran out of money, the two drove to the car wash around 6:00 p.m. so that Mason could take money from the car wash's petty cash. Mason said that after he took the money, he and his friend walked to a different bar down the street from the car wash. The two then left

3

that bar to walk back to the car wash for more money. Mason said that his friend waited in the car and turned on the headlights because he was having trouble opening the door. He also said that he urinated outside the car wash. Mason said that while he was inside getting money, a police car pulled into the lot. Mason admitted telling the officer that he was coming from the VFW to get more beer.

The jury found Mason guilty of first-degree test refusal. The district court sentenced Mason to 48 months in prison. Mason appealed.

## D E C I S I O N

### I. Jury Instructions

A district court is allowed "considerable latitude in the selection of language for jury instructions." *State v. Ihle*, 640 N.W.2d 910, 916 (Minn. 2002). This court views jury instructions in their entirety to determine whether they fairly and adequately explain the law. *State v. Flores*, 418 N.W.2d 150, 155 (Minn. 1988). The instructions must define the crime charged. *Ihle*, 640 N.W.2d at 916. If the instructions, read as a whole, correctly state the law "in language that can be understood by the jury, there is no reversible error." *State v. Peou*, 579 N.W.2d 471, 475 (Minn. 1998). A jury instruction that misstates the law is error. *State v. Kuhnau*, 622 N.W.2d 552, 556 (Minn. 2001).

The district court instructed the jury on the elements of test refusal as follows:

> The elements of refusal to submit to testing are: First a peace office[r] has probable cause to believe that Mr. Mason drove, operated or was in physical control of a motor vehicle while impaired by alcohol.
>
> Probable cause means that the officers, based on their observation, information, experience and training can testify

4

to the objective facts and circumstances in the particular situation that lead the officer to believe that Mr. Mason was driving, operating, or in physical control of a motor vehicle while impaired by alcohol.

The State does not have to prove beyond a reasonable doubt that Mr. Mason was driving or impaired by alcohol, rather, the State must prove that there w[ere] sufficient objective facts to support an officer's reasonable belie[f] that Mr. Mason was driving while impaired by alcohol.

Second element. The peace officer placed Mr. Mason under lawful arrest for driving while impaired. An arrest is lawful when the officer has probable cause to believe that the defendant is in violation of the law.

A. *Plain error*

Mason first argues these instructions improperly explained probable cause in a subjective manner. He next contends that the instructions did not inform the jury to determine probable cause based on the totality of the circumstances, and they did not define probable cause as an "honest and strong suspicion." He further asserts that the second element did not properly define "lawful arrest."

Because Mason did not object to the instructions at trial, we review for plain error. *See State v. Prtine*, 784 N.W.2d 303, 316 (Minn. 2010). To establish plain error, "there must be (1) error; (2) that is plain; and (3) the error must affect substantial rights." *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998). If all three prongs are met, we must assess whether we "should address the error to ensure fairness and the integrity of the judicial proceedings." *Id.*

Mason bases his argument on the Minnesota Supreme Court's decision in *State v. Koppi*, 798 N.W.2d 358 (Minn. 2011). In *Koppi*, the district court, in instructing the jury

5

on the elements of test refusal, defined probable cause as "the officer can explain the reason the officer believes it was more likely than not that the defendant drove, operated or was in physical control of a motor vehicle while under the influence of alcohol." *Id.* at 363. The *Koppi* court identified three flaws with that instruction: (1) it did not require the officer to articulate specific facts and circumstances supporting probable cause, (2) it did not require the jury to determine if an objective officer would have probable cause based on the totality of the circumstances, and (3) it misstated the probable cause standard as "more likely than not" rather than the correct "honest and strong suspicion." *Id.* at 363–64.

Applying the principles of *Koppi* here, we do not agree with Mason's claim that the instruction incorrectly charged the jury with considering probable cause from a subjective standpoint. The instruction directed the jury to consider "the objective facts and circumstances in the particular situation." Although the district court did not specifically instruct the jury to consider the viewpoint of a reasonable officer, it did instruct them to consider "objective facts." The viewpoint of a reasonable person is synonymous with objective observations. *See State v. Cripps*, 533 N.W.2d 388, 391 (Minn. 1995) ("The reasonable person standard is an objective standard . . . .").

The district court further instructed the jury to consider whether "there w[ere] sufficient objective facts to support *an* officer's reasonable belie[f]." (Emphasis added.) After listing the elements, the district court again instructed the jury to determine "whether the officers had *an objective and reasonable basis* for concluding that Mr. Mason was driving." (Emphasis added.) When the instruction is read in its entirety, the

6

district court correctly instructed the jury to consider the objective facts from a reasonable officer's perspective.

Mason's claim that the instruction was subjective because it included the phrase, "the officers, based on their observation, information, experience and training can testify to the objective facts and circumstances in the particular situation" also fails. This aspect of the instruction went to the first requirement of *Koppi*: that the officers recite actual observations and circumstances to support probable cause rather than just a "gut feeling." 798 N.W.2d at 363. More importantly, *Koppi* recognized that "because an officer's training and experience is the lens through which the fact-finder must evaluate the reasonableness of an officer's determination of probable cause, probable cause incorporates the individual characteristics and intuitions of the officer to some extent." *Id.* at 362. Reasonableness is still an objective inquiry, but it is evaluated in light of the officer's training and experience. *Id.* This aspect of the instructions did not create a subjective standard for probable cause.

Mason further claims that the instruction was erroneous because it did not include the phrase "totality of the circumstances." But the focus in *Koppi* was not on the phrase "totality of the circumstances." Instead, the supreme court focused on whether the jury was instructed to consider the totality of the circumstances from a reasonable officer's viewpoint rather than from a particular officer's perspective. *Id.* at 363–64. And while the district court here did not use the phrase "totality of the circumstances," it did direct the jury to consider "the objective facts and circumstances in the particular situation," and it included that the state must prove "that there w[ere] sufficient objective facts to support

an officer's reasonable belie[f]." Because district courts are given "considerable latitude" in crafting jury instructions, *Ihle*, 640 N.W.2d at 916, this portion of the instruction was not erroneous.

Mason's argument regarding the absence of "honest and strong suspicion" language in the jury instruction similarly fails. In *Koppi*, the supreme court held the instruction was incorrect not merely because it lacked the "honest and strong suspicion" language, but because it gave an erroneous standard of "more likely than not." 798 N.W.2d at 364. The supreme court noted, "The 'honest and strong suspicion' standard requires more than mere suspicion." *Id.*

The current pattern jury instruction, based on *Koppi*, instructs the jury to consider whether the circumstances "would lead a reasonable officer to have an honest and strong suspicion that the defendant was driving." 10A *Minnesota Practice*, CRIMJIG 29.28 (Supp. 2014). Here, the district court instructed the jury to determine whether the objective facts would "support an officer's reasonable belie[f] that Mr. Mason was driving." Probable cause, in addition to being defined as an "honest and strong suspicion," has also at times been stated in terms of an officer's "reasonable belief." *See, e.g.*, *In re Welfare of G.M.*, 560 N.W.2d 687, 695 (Minn. 1997) (noting that probable cause requires police to have a "reasonable belief"). Accordingly, the language here correctly defined probable cause.

Mason next claims that the instruction wrongly defined "lawful arrest." The instruction directed the jury to consider whether Mason was lawfully arrested and defined lawful arrest as "when the officer has probable cause to believe that the defendant is in

8

violation of the law." This instruction essentially directed the jury to the previous instruction defining probable cause, which gave a correct, objective definition. Accordingly, because the earlier instruction was correct, this instruction was also correct. *See State v. Ouellette*, 740 N.W.2d 355, 360 (Minn. App. 2007) (noting redundancy in test-refusal instruction between probable cause in first element and lawful arrest in second element), *review denied* (Minn. Dec. 19, 2007).

Because Mason has not established the first prong of the plain error test, it is unnecessary to discuss the other prongs.

### B. Abuse of Discretion

Mason asserts that the district court abused its discretion by adding language to the jury instructions in two places. He contends that the district court's inclusion of language regarding the burden of proof and clarification of available defenses were unnecessary, argumentative, and impermissibly shifted the burden of proof. We disagree.

Before the district court gave the instructions, it informed counsel that it intended to clarify that the jury was not "bound to conclude that if [Mason] was not driving, he is not guilty." This addition was not an abuse of discretion. *See Paulson v. Lapa, Inc.*, 450 N.W.2d 374, 378 (Minn. App. 1990) ("It is well established that correction of any alleged misconception which the jury might have gained from the arguments of counsel by further court instructions is a matter that rests largely in the discretion of the trial court."), *review denied* (Minn. Mar. 22, 1990).

Nor was this addition argumentative; it was a correct statement of the law. To convict a defendant of test refusal, the state is not required to prove that a defendant was

actually driving; it only need prove that the police had probable cause to believe that the defendant was driving. *See* Minn. Stat. §§ 169A.51, .52 (2014); *see also* Minn. Stat. § 169A.20, subd. 2 (incorporating §§ 169A.51 and .52); *Ouellette*, 740 N.W.2d at 360 (holding that prerequisites for testing under § 169A.51 are elements of criminal test refusal); CRIMJIG 29.28 (elements of test refusal). Furthermore, Minnesota Statutes section 169A.46 (2014), which lists affirmative defenses, omits "not driving" as an affirmative defense to test refusal. And Minnesota caselaw does not suggest that "not driving" is a defense to test refusal. Because the instructions correctly stated the law in language that could be understood by the jury, no error occurred. *State v. Cross*, 577 N.W.2d 721, 726 (Minn. 1998).

Mason further contends that because the district court instructed the jury that his claim of "not driving" was not a defense, it implied that he had a duty to provide some defense to the charge against him. But the district court repeatedly informed the jury that the state carried the burden to prove beyond a reasonable doubt that Mason was guilty and that Mason did not have to prove anything. And the district court did not instruct the jury that Mason must prove a defense, it merely clarified that his argument was not a defense.

Because the district court's jury instructions correctly stated the law and did not shift the burden of proof, and given the considerable latitude district courts have in crafting jury instructions, no abuse of discretion occurred.

Mason asserts that the cumulative effect of these alleged errors requires reversal. Because the instructions were not error, this argument lacks merit.

## II. Constitutionality of the Test-Refusal Statute

Finally, Mason argues that the test-refusal statute is unconstitutional. The Minnesota Supreme Court recently rejected Mason's argument in *State v. Bernard*, ___ N.W.2d ___, 2015 WL 543160 (Minn. Feb. 11, 2015). In *Bernard*, the supreme court held that a warrantless breath test of an arrested suspect is a constitutionally reasonable search incident to arrest. *Id.* at *7. The supreme court also determined that a warrantless breath test furthers the state's interest in highway safety and is "reasonably related to the government's interest in keeping impaired drivers off the road." *Id.* at *8. Because encouraging drivers to submit to breath tests by criminalizing their refusal relates to the state's ability to prosecute drunk drivers and keep the roads safe, the supreme court held that the test-refusal statute is constitutional. *Id.* at *9.

Given the recent decision in *Bernard*, Mason's constitutional argument fails.

**Affirmed.**