*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-2170**

State of Minnesota,
Respondent,

vs.

Cory Allen Wuollet,
Appellant.

**Filed October 26, 2015
Affirmed
Larkin, Judge**

Washington County District Court
File No. 82-CR-14-3728

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Dave Snyder, Hugo City Attorney, Sarah B. Sicheneder, Assistant City Attorney, Johnson & Turner Law, Forest Lake, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Stephen L. Smith, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Chutich, Presiding Judge; Ross, Judge; and Larkin, Judge.

UNPUBLISHED OPINION

**LARKIN**, Judge

Appellant challenges his conviction of violation of a harassment restraining order, arguing that the evidence at trial was insufficient to sustain his conviction, that the district court erred by admitting the harassment restraining order into evidence, and that he received ineffective assistance of trial counsel. Appellant raises additional arguments in a pro se brief. We affirm.

## FACTS

Respondent State of Minnesota charged appellant Cory Allen Wuollet with violation of a harassment restraining order, alleging that his ex-girlfriend, J.G., had a restraining order against him and that he violated the order by driving past her residence. The case was tried to a jury.

At trial, J.G. testified that she used to date Wuollet and that they had lived together in Hugo for about a year and a half. She testified that they broke up in May 2013 and that she obtained a harassment restraining order against him in June 2014, which prohibited Wuollet from coming within 100 yards of her Hugo residence. J.G. testified that she learned from a neighbor that Wuollet drove past her house on September 4, 2014.

The state called J.G.'s neighbor, S.L., as a witness. S.L. testified that she had seen Wuollet hundreds of times when he was living with J.G. S.L. testified that on the afternoon of September 4, she clearly saw Wuollet driving a black car in her neighborhood. She testified that Wuollet came within ten feet of her and that she saw Wuollet drive by J.G.'s house. She further testified that Wuollet slowed down, stopped

in front of J.G.'s house, and looked at it. S.L. saw Wuollet drive by J.G.'s house three to four times that day.

Wuollet called two witnesses to establish an alibi defense. His girlfriend, R.N., testified that on September 4, she was with Wuollet at his sober house from around 4:00 p.m. until "maybe" 6:00 p.m. She saw Wuollet again at 7:15 p.m. One of Wuollet's friends, J.A., testified that he was with Wuollet from 4:00 p.m. to 6:00 p.m. that day.

The parties stipulated to the existence of the harassment restraining order. Given the stipulation, the district court asked if a copy of the order would be entered into evidence. The prosecutor and Wuollet's attorney agreed that a copy of the order would be received as evidence but that it would not "have to be proffered or proved up." Nonetheless, before admitting the restraining order into evidence as an exhibit, the district court asked if Wuollet objected to its admission. Wuollet's attorney responded, "No objection, Your Honor." The first page of the restraining order listed the following "reasonable grounds to believe that [Wuollet] has harassed [J.G., the] Petitioner": (1) "Followed, pursued or stalked the Petitioner," (2) "Made uninvited visits to the Petitioner," (3) "Made harassing phone calls to the Petitioner," (4) "Made threats to the Petitioner," (5) "Frightened Petitioner with threatening behavior," (6) "Broke into and entered the Petitioner's Residence," (7) "Stole property from the Petitioner," and (8) "Took pictures of the Petitioner without permission of the Petitioner."

During jury deliberations, the jury asked the district court two questions. The first question was, "Can we take the information on the restraining order into consideration when making our decision (referring to the character of the defendant)." The district

court instructed the jury, "No character evidence is to be considered. The harassment restraining order is offered in evidence only to establish its existence, not to establish the basis for it. The facts in this case need to be established independently." The second question was, "Can we use the testimony of one witness as the sole consideration for our decision?" The district court instructed the jury, "[W]itness credibility is at your complete discretion. And there is a jury instruction included that talks about some of the things you can consider in giving witnesses credibility or not finding them credible."

The jury found Wuollet guilty. Wuollet moved for a new trial, arguing that (1) the district court erred by sending the restraining order into the jury-deliberation room as an exhibit and that, at the very least, the exhibit should have been redacted; (2) his trial counsel failed to establish the precise time when the incident took place, which would have supported his alibi defense; and (3) examination of his cell phone records would show that his phone was in another city on the day the incident took place. The district court denied Wuollet's motion, sentenced him to serve 90 days in jail, and awarded him 90 days of jail credit. This appeal follows.

**DECISION**

**I.**

Wuollet contends that the state failed to prove beyond a reasonable doubt that he was guilty of violating the harassment restraining order. An appellate court assesses the sufficiency of the evidence supporting a conviction by determining whether the legitimate inferences drawn from the evidence in the record would permit a jury to conclude that the defendant was guilty beyond a reasonable doubt. *State v. Pratt*, 813

4

N.W.2d 868, 874 (Minn. 2012). The court's review is limited to a close analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction, is sufficient to allow the jury to reach the verdict that it did. *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989). The reviewing court must assume "the jury believed the state's witnesses and disbelieved any evidence to the contrary." *State v. Moore*, 438 N.W.2d 101, 108 (Minn. 1989). This is especially true when a determination of guilt depended mainly on the resolution of conflicting testimony. *State v. Pieschke*, 295 N.W.2d 580, 584 (Minn. 1980). The reviewing court will not disturb the verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude the defendant was guilty of the charged offense. *Bernhardt v. State*, 684 N.W.2d 465, 476-77 (Minn. 2004).

Wuollet argues that the evidence is insufficient to support the conviction because "[t]he state's case relies entirely on [S.L.'s] credibility since she is the only person claiming to have seen [him]." But "[i]t is well established that a conviction can rest upon the testimony of a single credible witness," and "[t]he weight and credibility of individual witnesses is for the jury to determine." *State v. Bliss*, 457 N.W.2d 385, 390 (Minn. 1990). Moreover, "on review it is necessary to assume that the jury believed the state's witnesses and disbelieved any contrary evidence." *Id.* (quotation omitted).

Wuollet argues that deference to a jury's credibility determinations is not unlimited, citing three supreme court cases that reversed convictions in the interests of justice or because of highly unusual circumstances. *See State v. Huss*, 506 N.W.2d 290, 292-93 (Minn. 1993) (noting "unusual facts" and reversing conviction for criminal sexual

5

conduct where child victim's testimony lacked credibility and victim had been exposed by the state to highly suggestive material); *State v. Langteau*, 268 N.W.2d 76, 77 (Minn. 1978) (ordering a new trial "in the interests of justice" where victim's actions were left "unexplained" and motive for defendant to commit robbery against an acquaintance was "left a mystery"); *State v. Gluff*, 285 Minn. 148, 151-53, 172 N.W.2d 63, 65-66 (1969) (reversing aggravated-robbery conviction "in the interest of justice" where uncorroborated identification of the defendant was not reliable).  This case does not present unusual facts, and Wuollet does not explain why the interests of justice require reversal.  He simply asks this court to second-guess the jury's credibility determination. This court must assume the jury believed the state's witnesses and disbelieved any evidence to the contrary.  *See Moore*, 438 N.W.2d at 108.  Because the jury could reasonably conclude that Wuollet was guilty of the charged offense based on S.L.'s testimony, we do not disturb the jury's verdict.

**II.**

Wuollet contends that the district court erred "when it denied [his] motion for a new trial because there was a reasonable probability that allegations of prior bad acts on the face of a harassment restraining order affected the outcome of the trial."  "[Appellate courts] review the denial of a motion for a new trial for an abuse of discretion."  *State v. Hawes*, 801 N.W.2d 659, 676 (Minn. 2011).

As support for his new-trial motion in district court, Wuollet argued that the harassment restraining order should not have gone into the jury-deliberation room as an exhibit and that, at the very least, it should have been redacted.  Wuollet does not raise or

6

brief those specific issues on appeal, so they are waived. *See Scruggs v. State*, 484 N.W.2d 21, 24 n.1 (Minn. 1992) (noting that because an appellate brief did not address certain issues raised in a petition for postconviction relief, those issues were waived on appeal).

On appeal, Wuollet generally argues, for the first time, that the harassment restraining order should not have been received as an exhibit because the information on the face of the restraining order was inadmissible character evidence and unduly prejudicial. *See* Minn. R. Evid. 403 (stating that relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice"), 404(b) (stating that "[e]vidence of another crime, wrong, or act is not admissible to prove the character of a person in order to show conduct in conformity therewith). Wuollet acknowledges that he stipulated that the state could admit the harassment restraining order as an exhibit, but he notes that "[a]pparently, no one noticed that the front page of the harassment order contained [information] alleging that [he] had engaged in significant misconduct."

An appellate court may review an issue not raised in the district court if there was plain error affecting substantial rights. *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998). Under this standard, we consider (1) whether there was an error, (2) whether such error was plain, and (3) whether it affected the defendant's substantial rights. *Id*. "An error is 'plain' if it is clear or obvious." *State v. Strommen*, 648 N.W.2d 681, 688 (Minn. 2002) (quotation omitted). "Usually this is shown if the error contravenes case law, a rule, or a standard of conduct." *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006).

"The third prong, requiring that the error affect substantial rights, is satisfied if the error was prejudicial and affected the outcome of the case." *Griller*, 583 N.W.2d at 741. If the three plain-error factors are established, a court may exercise its discretion to correct the error only if such error seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *Id*. at 742.

Wuollet does not cite any caselaw, rule, or standard suggesting that a district court errs by receiving an exhibit into evidence when the defendant stipulated to its admission and, when asked to state a position, expressly waived objection to its admission. Moreover, admission of the restraining order did not affect Wuollet's substantial rights. The district court instructed the jury that "[n]o character evidence is to be considered. The harassment restraining order is offered in evidence only to establish its existence, not to establish the basis for it." Appellate courts "presume that juries follow instructions given by the court and thereby recognize the effectiveness of curative instructions." *State v. Gatson*, 801 N.W.2d 134, 151 (Minn. 2011) (citation and quotation omitted). Because the district court did not plainly err by admitting the restraining order into evidence pursuant to Wuollet's stipulation and because the district court provided a curative instruction to reduce any potential prejudice resulting from his stipulation, Wuollet is not entitled to relief under the plain-error standard.

In sum, the district court did not abuse its discretion by refusing to grant a new trial based on the information on the face of the harassment restraining order.

## III.

Wuollet contends that the district court "abused its discretion when it denied [his] motion for a new trial based on his claim that he received ineffective assistance of counsel when his counsel failed to present adequately his alibi defense." *See Hawes*, 801 N.W.2d at 676 (stating that an appellate court reviews the denial of a new-trial motion for an abuse of discretion). To succeed on a claim of ineffective assistance of counsel, a defendant must show that his counsel's representation fell below an objective standard of reasonableness and that, but for the counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88, 694, 104 S. Ct. 2052, 2064, 2068 (1984).

Wuollet asserts that his trial attorney intended to argue, based on the contents of a police report, that the alleged violation occurred between 4:30 and 5:30 p.m., but that the attorney "failed to establish any evidence in the record demonstrating when the crime allegedly occurred." But S.L. testified that the incident occurred in the afternoon, and Wuollet's attorney elicited testimony that, if believed, would have established an alibi between roughly 4:00 p.m. and 6:00 p.m. Wuollet does not persuade us that his attorney's approach was objectively unreasonable. Moreover, even if a witness had testified that the incident occurred between 4:30 p.m. and 5:30 p.m., the jury still could have rejected the alibi testimony from Wuollet's girlfriend and friend. Wuollet has not demonstrated that the result of the trial would have been different but for his counsel's approach.

In sum, Wuollet fails to establish that his counsel's representation fell below an objective standard of reasonableness and that, but for the alleged errors, the result of the proceeding would have been different. The district court therefore did not abuse its discretion by refusing to grant a new trial based on Wuollet's claim that his trial counsel was ineffective.

Wuollet also contends, in a footnote, that "he did not have sufficient time to arrange forensic analysis of location information on [his] cell phone" and that the district court "erred in failing to grant the motion for a new trial on this basis." Wuollet does not cite legal authority or offer legal argument in support of that contention. "Assignment of error based on mere assertion and not supported by argument or authority is waived unless prejudicial error is obvious on mere inspection." *State v. Ouellette*, 740 N.W.2d 355, 361 (Minn. App. 2007) (quotation omitted), *review denied* (Minn. Dec. 19, 2007). Because we do not discern obvious prejudicial error, we deem this assignment of error waived.

**IV.**

In his pro se supplemental brief, Wuollet points out a typographical error in his appellate counsel's brief. He also asserts that "[t]his matter has caused me to be incarcerated . . . due to misrepresentation and facts that were left out that made my innocence quite clear." We have considered Wuollet's pro se statements and conclude that they do not provide a basis for relief. *See Ture v. State*, 681 N.W.2d 9, 20 (Minn. 2004) (rejecting pro se arguments without detailing consideration of each argument).

**Affirmed.**