# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A23-1713

State of Minnesota,
Respondent,

vs.

Ava Thadette Smith,
Appellant.

**Filed September 30, 2024**
**Affirmed**
**Ede, Judge**

Chisago County District Court
File No. 13-CR-22-95

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Janet Reiter, Chisago County Attorney, David Hemming, Assistant County Attorney, Center City, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Charles F. Clippert, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Ross, Presiding Judge; Ede, Judge; and Schmidt, Judge.

## SYLLABUS

The requirement set forth in Minnesota Statutes section 169A.51, subdivision 7(c) (2020), that "[t]he person administering a breath test must be fully trained in the administration of breath tests pursuant to training given by the commissioner of public safety[,]" is not an element of the crime of refusal to submit to a breath test under Minnesota Statutes section 169A.20, subdivision 2(1) (2020).

## OPINION

**EDE**, Judge

In this direct appeal from the final judgment of conviction for refusal to submit to a breath test, appellant argues that the evidence was insufficient to sustain her conviction because the state did not present evidence that the deputy who requested the breath test was properly trained to administer it. Because we conclude that proof of a test administrator's training is not an element of the test-refusal crime, we affirm.

## FACTS

In February 2022, respondent State of Minnesota charged appellant Ava Thadette Smith with one count of refusal to submit to a breath test, in violation of Minnesota Statutes section 169A.20, subdivision 2(1) (2020), for refusing to submit to an evidentiary breath test after Smith was lawfully arrested based on suspicion of driving while impaired (DWI). The matter proceeded to a jury trial.

The deputy who requested the breath test from Smith was the sole witness at trial and testified as follows. After responding to a report of a vehicle in a ditch, the deputy arrived at the scene and saw Smith standing outside the driver's door. When the deputy spoke with Smith, she observed that Smith's eyes were watery and bloodshot, that Smith's speech was slurred, and that Smith was confused and unbalanced. Smith denied drinking alcohol. The deputy conducted field sobriety tests, during which the deputy smelled alcohol and marijuana on Smith's person. Smith displayed signs of impairment. Another law

enforcement officer administered a preliminary breath test, which showed that Smith's alcohol concentration was 0.186.[1]

The deputy arrested Smith for DWI and brought Smith to the Chisago County jail. At the jail, the deputy informed Smith that refusal to submit to a breath test is a crime by reading her the statutorily required breath-test advisory.[2] After providing Smith an opportunity to contact an attorney, the deputy asked her if she would take a breath test. Smith refused, stating that she did not believe the breath-test machine would be accurate.

The deputy testified about her training in DWI enforcement, including field sobriety testing and roadside DWI investigation. The deputy stated that she received "all the standard training for DWI." But the deputy did not specifically testify that she was trained to administer breath tests, nor did the deputy say that she was trained to operate the breath-testing machine.

The jury found Smith guilty of test refusal, and the district court sentenced Smith to 364 days in jail.

Smith appeals.

## ISSUE

Is the requirement that "[t]he person administering a breath test must be fully trained in the administration of breath tests pursuant to training given by the commissioner of

---

[1] *See* Minn. Stat. § 169A.41, subd. 2(4) (2020) (providing that the results of a preliminary breath test may be used "in a prosecution for a violation of section 169A.20, subdivision 2 (driving while impaired; test refusal)").

[2] *See* Minn. Stat. § 169A.51, subd. 2 (2020) (setting forth the requisite breath-test advisory).

public safety[,]" as set forth in Minnesota Statutes section 169A.51, subdivision 7(c) (2020), an element of the crime of refusal to submit to a breath test under Minnesota Statutes section 169A.20, subdivision 2(1)?

## ANALYSIS

Smith challenges the sufficiency of the evidence sustaining her conviction for refusal to submit to a breath test under Minnesota Statutes section 169A.20, subdivision 2(1) (the test-refusal statute). She argues that the evidence was insufficient because the state did not prove that the deputy who requested that she submit to a breath test was fully trained to administer the test per Minnesota Statutes section 169A.51 (2020) (the implied-consent statute). We disagree.

Smith's contention that the trial record is insufficient to support her conviction requires us to interpret the test-refusal and implied-consent statutes. "When a sufficiency-of-the-evidence claim turns on the meaning of the statute under which a defendant has been convicted, [appellate courts] are presented with a question of statutory interpretation that [the courts] review de novo." *State v. Bradley*, 4 N.W.3d 105, 109 (Minn. 2024) (quotation omitted). "When interpreting a statute, [an appellate court's] goal is to ascertain and effectuate the intent of the Legislature." *State v. Robinson*, 921 N.W.2d 755, 758 (Minn. 2019) (quotation omitted). The appellate court "read[s] the statute as a whole to give effect to all of its provisions." *Id.* (quotations omitted); *see also State v. Lampkin*, 994 N.W.2d 280, 287 (Minn. 2023) (stating that appellate courts "do not interpret statutory phrases in isolation because the meaning of a phrase often depends on how it is being used in the context of the statute" (quotation omitted)). Under Minnesota Supreme Court precedent,

4

our first task is to determine "whether the language, on its face, is ambiguous." *Id.* "If a statute is unambiguous, [appellate courts] apply its plain meaning." *State v. Henderson*, 907 N.W.2d 623, 625 (Minn. 2018).

Under the test-refusal statute, "[i]t is a crime for any person to refuse to submit to a chemical test . . . of the person's breath under [the implied-consent statute]." Minn. Stat. § 169A.20, subd. 2(1). And the implied-consent statute mandates that any person who is in physical control of a motor vehicle "consents . . . to a chemical test of that person's blood, breath, or urine for the purpose of determining the presence of . . . an intoxicating substance." Minn. Stat. § 169A.51, subd. 1(a). The implied-consent statute also provides that certain prerequisites must be satisfied before a person is legally obligated to complete a breath test, including that an officer has probable cause to believe that the person was driving while impaired. *Id.*, subds. 1-2. As a result, this court has held that these "prerequisites to the administration of a chemical test are incorporated into, and are elements of the [test]-refusal statute." *State v. Ouellette*, 740 N.W.2d 355, 360 (Minn. App. 2007), *rev. denied* (Minn. Dec. 19, 2007);[3] *see also State v. Koppi*, 798 N.W.2d 358, 362 (Minn. 2011) ("The plain language of section 169A.20, subdivision 2, . . . incorporates the requirement from section 169A.51 that an officer may request that a person submit to a chemical test when the officer 'has probable cause to believe the person was driving,

---

[3] *Ouellette* involved a defendant's refusal to submit to a urine test, rather than a breath test. 740 N.W.2d at 357. As this court recently noted, the holding in *Ouellette* no longer applies to blood- or urine-test refusals following amendments to the test-refusal and implied-consent statutes. *State v. Torrez*, 8 N.W.3d 674, 679 n.3 (Minn. App. 2024). *Ouellette* still applies, however, to breath-test refusals. *Id.*

5

operating, or in physical control of a motor vehicle' while impaired." (footnote omitted) (quoting Minn. Stat. § 169A.51, subd. 1(b) (2010))).

On appeal, Smith relies on subdivision 7(c) of the implied-consent statute, which provides that "[t]he person administering a breath test must be fully trained in the administration of breath tests pursuant to training given by the commissioner of public safety." Minn. Stat. § 169A.51, subd. 7(c). We are not persuaded that the state must prove a would-be test administrator's training as an element of refusal to submit to a breath test.

By its plain language, the training requirement in subdivision 7(c) governs a person who is "administering a breath test"—not a person requesting a breath test. That language makes clear that a breath-test administrator's training comes into play only if a breath test is administered. Moreover, the rest of subdivision 7(c)—which limits liability for persons "drawing blood" at the direction of an officer—likewise applies only if a blood test occurs. *Id.* (providing that certain "qualified person[s] drawing blood at the request of a peace officer for the purpose of determining the concentration of alcohol, a controlled substance or its metabolite, or an intoxicating substance [are] in no manner liable in any civil or criminal action except for negligence in drawing the blood"). And when subdivision 7 is read as a whole, the other subparts govern circumstances in which a test takes place, not scenarios in which a test is requested and refused. *See id.*, subd. 7(a) (defining who may draw blood), (b) (providing that "[t]he person tested has the right to have someone of the person's own choosing administer a chemical test or tests in addition to any tests administered"). Thus, whether read in isolation or in the context of the statute as a whole, the plain language of the breath-test training requirement set forth in subdivision 7(c)

6

controls how a test must be performed—and therefore applies only if a test is, in fact, administered. *See Lampkin*, 994 N.W.2d at 287; *Robinson*, 921 N.W.2d at 758. We are therefore unconvinced that this requirement is relevant if a breath test is refused.

Our conclusion is reinforced by comparing subdivision 7 with subdivisions 1(b) and 2 of the implied-consent statute. As outlined above, subdivisions 1(b) and 2 are incorporated as elements of the test-refusal crime. Subdivision 1(b) states that "[t]he test *may be required* of a person when an officer has probable cause . . . and one of . . . [four specified] conditions exists." Minn. Stat. § 169A.51, subd. 1(b) (emphasis added). And subdivision 2 states that, "*[a]t the time a breath test is requested*, the person must be informed" about certain information, such as the limited right to an attorney and the fact that test refusal is a crime. *Id.*, subd. 2 (emphasis added). In short, given the plain language of subdivisions 1(b) and 2, the implied-consent statute expressly limits the circumstances under which officers may lawfully request a breath test. Because refusing a breath test is a crime only if the state proves that a test was properly requested, the state must prove those circumstances as elements. *See, e.g.*, *Koppi*, 798 N.W.2d at 362 ("Refusing a chemical test is not a crime . . . unless it can be proven beyond a reasonable doubt that an officer had probable cause to believe the person was driving, operating, or in physical control of a motor vehicle while impaired." (quotation omitted)). By contrast, the statutory requirement that the person administering a breath test must be fully trained includes no express limitation on when officers may lawfully request a breath test. *See State v. Stone*, 995 N.W.2d 617, 625 n.7 (Minn. 2023) (explaining that "[e]xpressio unius est exclusio alterius means 'the expression of one thing is the exclusion of another' and reflects the inference

7

that statutory omissions are intentional" (quoting *State v. Caldwell*, 803 N.W.2d 373, 383 (Minn. 2011))); *see also* Minn. Stat. § 645.19 (2020) ("Provisos shall be construed to limit rather than to extend the operation of the clauses to which they refer. Exceptions expressed in a law shall be construed to exclude all others."). Considering the language of the implied-consent statute, we see no basis for concluding that the state must prove that a person who requested a breath test—but did not administer the test because a DWI suspect refused—is fully trained in the administration of such tests.[4]

We similarly find no merit in Smith's assertion that "the state had to prove there was a valid testing process before there can be a refusal." In support of this contention, Smith relies on *State v. Thompson*, in which the supreme court held that a defendant "cannot be prosecuted for refusing to submit to an unconstitutional warrantless blood or urine test" and thus reversed the defendant's conviction for refusing a warrantless urine test. 886 N.W.2d 224, 234 (Minn. 2016). We discern no grounds for equating a statutory requirement governing the administration of breath tests to the constitutional warrant requirement to request a blood or urine test. And Smith does not advance any argument that the deputy's request for a breath test following her DWI arrest was unconstitutional.

---

[4] Smith also directs us to Minnesota Statutes section 634.16 (2020), which governs the admissibility of breath-test results. Section 634.16 provides that breath-test results, "when performed by a person who has been fully trained . . . pursuant to training given or approved by the commissioner of public safety or the commissioner's acting agent, are admissible in evidence without antecedent expert testimony" that the breath-testing instrument "provides a trustworthy and reliable measure of the alcohol in the breath." But unlike the implied-consent statute, section 634.16 is not incorporated into the test-refusal statute. More fundamentally, there are no breath-test results for test-refusal offenses. Thus, we reject Smith's argument that section 634.16 is relevant to a prosecution for test refusal.

Nor could she successfully maintain such a position. The Fourth Amendment permits "warrantless breath tests incident to arrests for drunk driving." *Birchfield v. N.D. Dep't of Transp.*, 579 U.S. 438, 474, 478 (2016) (affirming the judgment of the Minnesota Supreme Court in *State v. Bernard*, 859 N.W.2d 762 (Minn. 2015), and a Minnesota defendant's conviction in a "criminal[] prosecut[ion] for refusing a warrantless breath test" that the defendant "had no right to refuse").

In sum, we hold that the requirement set forth in Minnesota Statutes section 169A.51, subdivision 7(c), that "[t]he person administering a breath test must be fully trained in the administration of breath tests pursuant to training given by the commissioner of public safety[,]" is not an element of the crime of refusal to submit to a breath test under Minnesota Statutes section 169A.20, subdivision 2(1). As a result, the state was not required to prove that the deputy who would have administered Smith's test, if Smith had not refused that test, was properly trained in the administration of breath tests. Smith's sufficiency-of-the-evidence claim therefore fails.

## DECISION

The breath-test training requirement of Minnesota Statutes section 169A.51, subdivision 7(c), is not an element of the crime of refusal to submit to a breath test under Minnesota Statutes section 169A.20, subdivision 2(1). Thus, we conclude that Smith's challenge to the sufficiency of the evidence sustaining her conviction is unavailing.

**Affirmed.**